**STATE of Missouri, Respondent,**

v.

**Robert Leslie MOORE, Appellant.**

**No. 9394.**

Missouri Court of Appeals,
Springfield District.

Sept. 11, 1973.

John C. Danforth, Atty. Gen., Karen I. Harper, Asst. Atty. Gen., Jefferson City, for respondent.

Wayne T. Walker, William E. Stoner, Walker & Salveter, Springfield, for appellant.

WILLIAM M. KIMBERLIN, Special Judge.

The defendant, Robert Leslie Moore, was charged by amended Information with murder in the second degree under the Second Offender Act and was found guilty by the jury of manslaughter and was sentenced by the court to ten years in the Department of Corrections.

The defendant requests a reversal of the judgment and sentence upon three grounds: (1) The court erred in overruling defendant's motion for a mistrial because of the prejudicial effect of the publication of a newspaper article in violation of the defendant's rights under the Sixth and Fourteenth Amendments to the Constitution of the United States and in violation of art. 1, § 10 of the Constitution of Missouri. (2) The court erred in failing to give defendant's proposed accidental death instruction. (3) The court erred in instructing the jury on second degree murder.

The court states the salient facts necessary for the disposition of the defendant's three grounds for reversal. On December 2, 1971, at approximately 6:00 p. m. at Jeannie's Tavern located in Springfield, Greene County, Missouri, the defendant, Robert Leslie Moore, was playing pool. He had played pool with one Warney Eckles for about an hour when Dennis Ray Thornton, the deceased, came into the tavern and was standing by a column near the pool table. Thornton, who was subsequently killed, had a can of beer in hand and was standing four or five feet from the defendant. The defendant, with the small end of the pool cue in his hand, struck the deceased, Dennis Ray Thornton, with the large end of the cue striking him on the back of the neck at the base of the skull, the victim falling backwards on the floor. There were no weapons around the deceased; the floor was tile; and there were no protrusions or obstacles on the floor.

The defendant had previously had an argument or difficulty with the deceased over a check. The deceased lost the check, made payable to him by one Jack Mackey, in a crap game and in the presence of the defendant and others asked the maker to stop payment on the check. The deceased tore up the check in the presence of the defendant and the others. The defendant had not seen the deceased since the check episode until this day at Jeannie's Tavern.

The defendant testified, after striking the deceased with the pool cue, that the deceased had said to him, "I'm going to cut your guts out, you son-of-a-bitch;" that defendant backed up and deceased went for a pocket and when he did, he (the defendant) swung the pool cue.

Dennis Ray Thornton was taken by ambulance to the Lester E. Cox Medical Center in Springfield and was pronounced dead at 6:55 p. m. on December 2, 1971. An autopsy was performed which revealed there was a massive hemorrhage at the base of the brain surrounding the brain stem. It was subarachnoid in location and extended up over the cortex of the occipital areas of the cerebrum. The blow that struck the deceased was described to be something like a "rabbit punch."

The State desired to introduce the transcript of the testimony of one Ted Beaver, taken at the preliminary hearing, upon the ground that he was absent from the jurisdiction and unavailable. Prior to the beginning of the trial, evidence was heard by the trial court on two separate occasions relative to the availability of this witness. On the two prior occasions the matter was taken under advisement by the court. The jury was sworn and evidence was presented to the jury on the afternoon of July 17, 1972, and continued to approximately 5:45 p. m. The jury was then admonished by the court and permitted to separate. In the evening of July 17, 1972, the Springfield Leader and Press (city final) published an article relative to the case in which it was stated in substance that the proposed witness, Ted L. Beaver, was located in Phoenix, Arizona, and that the proposed witness told the officer three men had threatened him but that he didn't know who they were. By reason of this publication, the defendant's attorney the next morning on July 18, 1972, prior to the presentation of evidence, in chambers, moved the court for a mistrial because of this newspaper publicity. He alleged that it was common knowledge that the Springfield Leader and Press was the only daily newspaper of general circulation in the county and that section of the State and that it had large circulation and was generally read by most of the citizens in Greene County; that the article quoted information given at the hearing outside the presence of the jury; and that it was prejudicial to the defendant in that it left the inference that the defendant had threatened this witness to the point he was afraid to return to Springfield to testify; that defendant did not ask the court to instruct the jury in this regard for the reason that it would merely emphasize the content of the article. The trial court stated to the defendant's counsel he was willing to interrogate the jury as to whether any of them had read the article and if they had, had it caused them to form an

opinion as to the guilt or innocence of the defendant. The defendant's counsel did not want the trial court to so interrogate the jury. And under this posture of the case, the trial court overruled defendant's motion for a mistrial.

■ ■ As to the defendant's first ground for reversal, contending that the court erred in overruling his motion for a mistrial because of the publication in the Springfield newspaper, it must be emphasized that the defendant did not want the court to interrogate the jurors relative to this newspaper article even though the trial court was willing to do so. The trial court could not assume that the individual jurors had read the article; it could not assume that if any juror had read the article that he would be influenced by it to the extent he could not render a fair and impartial verdict. There must be some evidence before the court to prove the article prejudiced the jury against the defendant. It was incumbent upon the defendant to demonstrate how and in what manner the publicity influenced the deliberation of the jury to the prejudice of the defendant. The burden of proof rests with the defendant. State v. Grimm, 461 S.W.2d 746 (Mo.1971), and State v. Crider, 451 S.W.2d 825, 827[2] (Mo.1970).

The Supreme Court of Missouri, en banc, in State v. Coleman, 460 S.W.2d 719, 728 (1970), stated relative to newspaper publicity:

"As to the publicity during trial there is no proof or even a suggestion that the jury was aware of it. The jury was properly qualified and kept in the custody of officers during the trial. We can see no basis for ruling that any prejudicial error occurred."

■ The defendant has no standing to move the court to declare a mistrial and at the same time request the court not to take any action to determine if, in fact, any prejudice existed in the minds of the jurors.

The defendant relies heavily upon the United States Supreme Court case of Sheppard v. Maxwell, 384 U.S. 333, 86 S. Ct. 1507, 16 L.Ed.2d 600 (1966), as authority for granting the mistrial. While this is a landmark case in the field of trial publicity, the fundamental principles announced therein are inapplicable to the case at bar. This court holds that the overruling of the motion for mistrial did not violate the defendant's rights under the federal or state constitutions and the contention of the defendant is without merit.

■ ■ As to the defendant's next contention, that the court erred in failing to give an accidental death instruction, it is true that such an instruction must be given under the law of the case whether requested or not if there is a factual basis to support it. State v. Vincent, 321 S.W.2d 439, 444[10] (Mo.1959). It is the considered opinion of this court there was not a factual basis to support such an instruction.

Section 559.050 RSMo 1969, V.A.M.S., sets forth two general categories of situations where homicides are excusable when committed by accident or misfortune; said section reads as follows:

"Homicide shall be deemed excusable when committed by accident or misfortune, in either of the following cases:

(1) In lawfully correcting a child, apprentice or servant, or in doing any other lawful act by lawful means, with usual and ordinary caution, and without unlawful intent; or

(2) In heat of passion, upon any sudden or sufficient provocation, or upon sudden combat, without any undue advantage being taken, and without any dangerous weapon being used, and not done in a cruel and unusual manner."

The evidence in the instant case does not bring it within either category. There was no evidence of any dangerous weapon near the area where the deceased lay on the floor. The defendant used a dangerous weapon, which was a pool cue, to strike

the deceased. There is no evidence the defendant acted in a heat of passion. This is sufficient to take the case out of the second category and justify not submitting an accidental death instruction under Paragraph 2 of the statute.

 The defendant's testimony advanced the theory of self-defense. He stated he swung the pool cue and struck the deceased because the deceased said to him, " 'I'm going to cut your guts out' "; thereafter, the deceased went for his pocket and the defendant swung the pool cue. The jury was properly instructed on the issue of self-defense. A manslaughter instruction was given which required a finding beyond a reasonable doubt that the defendant feloniously and intentionally struck the deceased with a deadly and dangerous weapon without malice, deliberation and premeditation and that the defendant was not acting in self-defense as defined in the self-defense instruction. The jury by its verdict repudiated the defendant's defense of self-defense. The jury found the defendant guilty under the manslaughter instruction in effect saying the defendant was not without unlawful intent. There is no evidence to show defendant swung the pool cue and accidentally struck the deceased; but on the contrary, the defendant actually did what he intended to do, to wit: Strike the deceased. He is responsible for the results that naturally flow from this intentional act. The fact death ensued does not lessen defendant's responsibility. Furthermore, the defendant's intentional swinging of the weighted end of the pool cue at the deceased's head cannot be said to be consistent "with usual and ordinary caution" within the meaning of the first category of the statute, supra. Therefore, the factual situation of the case does not come under Paragraph 1 of the statute. Hence, the defendant's argument that the court erroneously failed to instruct on excusable homicide is without merit.

The court has read and analyzed the cases cited by the defendant to support his position but finds them distinguishable and unavailing to him.

 The defendant's final ground of error is that the evidence is not sufficient to support the instruction on murder in the second degree. This point can be disposed of succinctly. Since the defendant was not convicted of murder in the second degree, he is in no position to claim that it was an erroneous submission. State v. McQueen, 399 S.W.2d 3, 6[3] (Mo.1966); State v. Wallach, 389 S.W.2d 7, 14[8] (Mo.1965); State v. Howard, 486 S.W.2d 660 (Mo. App.1972).

This court determines the amended Information was sufficient, the verdict was responsive to the evidence, allocution was granted and the judgment and sentence imposed were in accordance with the law. All of said proceedings were free of prejudicial error. Therefore, the judgment and sentence of the trial court are in all things affirmed.

TITUS, C. J., and STONE, HOGAN, and BILLINGS, JJ., concur.