**STATE of Missouri, Respondent,**

v.

**Daniel MAXSON, Appellant.**

**No. 52932.**

Missouri Court of Appeals,
Eastern District,
Division Four.

May 31, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 29, 1988.

Application to Transfer Denied
Sept. 13 1988.

James J. Knappenberger, Shaw, Howlett & Schwartz, Clayton, for appellant.

William L. Webster, Atty. Gen., Christopher M. Kehr, Asst. Atty. Gen., Jefferson City, for respondent.

GRIMM, Judge.

In this jury tried case, defendant was convicted of arson in the second degree in violation of § 569.050 RSMo 1986.

There are five allegations of error on appeal. First, that the trial court erred in denying his motion for judgment of acquittal at the close of the state's case. We disagree, because defendant waived any error with respect to the denial of the motion by introducing evidence in his own behalf. *State v. Parker*, 543 S.W.2d 236, 240 (Mo. App.E.D.1976). Second, that "the trial court plainly erred to the point of manifest injustice by failing to instruct the jury on alibi." Defendant did not request an alibi instruction; the trial court is under no duty to instruct on alibi unless requested; and there is no manifest injustice by the trial court in failing to give the instruction. Third, that the trial court committed plain

error in failing to include a paragraph relating to a security interest in the property in the verdict directing instruction on arson. We disagree, because there was no evidence to support the inclusion of that paragraph in the instruction. Fourth, that the trial court erred in its treatment of several of defendant's motions. We disagree, because defendant's point did not comply with Rule 84.04(d), thereby justifying denial on that basis alone. In addition, all motions presented to the trial court were ruled upon. Fifth, that defendant was erroneously restricted by the trial court in his cross examination of a state's witness. We disagree, because in regard to one alleged error, there was no objection sustained by the trial court; and in regard to the other alleged error, there was no abuse of discretion by the trial court in its ruling on the relevancy of evidence. We affirm.

In December, 1982, defendant purchased a house from Roy May for $20,000.00. Defendant paid down $1000, and May financed the balance, secured by a deed of trust. The note required a balloon payment of $3,000 in March, 1983, and monthly payments of $229.08 on the 17th of each month.

On March 31, 1983, defendant called May and told him that he could not make the balloon payment, but that he would be able to by August; May agreed to this. In June, 1983, May discussed the possibility of foreclosure with Jackie Schletter, who was collecting the monthly payments for him. Schletter told defendant and his wife several times that if payments were not made on the $3,000 note, May would foreclose.

Between June, 1983, and May, 1984, defendant paid $405 on the $3000 balloon payment. Due to the lack of payment on the note, May called defendant's wife on June 4, 1984, and talked to her about refinancing with someone else. Also, on June 13, May sent a certified letter to defendant advising him that he was going to foreclose. This letter was returned unaccepted. At the time of the fire, $2595 of the $3000 balloon was still owed. As to his required monthly payments of $229.08, the last payment made by defendant was on June 25.

On July 22, 1984, at approximately 5:25 a.m., the Wright City Fire Department responded to a fire at defendant's house. The fire chief, Larry Zuhone, found both doors of the house were locked. The firemen made the only entry to the house through a back window on the second floor. Around 8:00 that morning, Zuhone and a fire marshal, Russ Mason, investigated. Mason found the heaviest fire damage to be at the rear of the building. On the back porch area, he noticed that the door had a burn pattern on the outside. After entering the house, Mason found that the kitchen had heat and smoke damage, but that the heaviest burning had occurred near the ceiling. The living room, however, had severe fire damage which extended from the baseboards up to the ceiling, and there was also alligator charring which, according to Mason, indicates a rapid-moving, intense fire. At the door at the base of the steps going upstairs, Mason found a flammable liquid burn pattern on the floor. This was unusual because normally there would be no reason to find such a pattern. This pattern ran back across the porch and under the porch door outside to the concrete steps. A bedroom directly above the living room was severely damaged, with most of the floor burned away, but the other two bedrooms primarily had heat and smoke damage. Mason only saw a few items of clothing in one upstairs closet.

At the scene of the fire, a chlordane bottle containing fuel oil, diesel fuel, or something similar, was found on the kitchen table. A five gallon fuel can was found on the back porch.

Mason ruled out an accidental cause for the fire. This was because there was no electricity servicing the first floor at the time of the fire, so the fire could not have been caused by faulty wiring. He concluded that the fire was of an incendiary origin, i.e., intentionally set. The fact that there were two separate fires—kitchen and living room—was significant, as well as the lack of a basis for an accidental fire.

Gary Maxson, defendant's brother, testified that right before the weekend prior to July 4, 1984, the defendant, while drunk, told him that he would pay him or anyone he knew $1000 to burn his house down while he was away for the weekend. Deborah Maxson, wife of Dwayne Maxson and defendant's sister-in-law, testified that on July 12, ten days before the fire, defendant told her he was going to get $50,000 to $60,000 because he was going to burn his house down. Also, she said she had seen defendant remove blankets and boxes from his house eight days prior to the fire.

Defendant and his wife filed fire insurance claims. For personal property, they claimed $24,370.46. This claim was not paid, but May as mortgage holder was paid for the house.

Defendant's wife testified that defendant and her brother-in-law, Poncho Harraman, sprayed the house for roaches the night before the fire. As a result, the Maxson's spent the night at the Harraman's, who lived across the street. She moved a baby crib and playpen, as well as some clothes, over to the Harraman's. At her sister's request, the television was also moved there. According to her, they all went to bed around midnight; she and her husband did not wake up until 5:30 a.m., when her sister pounded on the door and yelled that their house was on fire. She stated that there was no way that her husband could have left during the night without her knowing it. Poncho and Peggy Harraman both confirmed defendant's wife's story.

Defendant first alleges that the trial court erred in denying his motion for judgment of acquittal at the close of state's case.

■ Defendant did not stand on his motion for judgment of acquittal. After his motion was denied, defendant introduced evidence in his own behalf, which thereby waives any error with respect to the denial of the motion. *State v. Parker*, 543 S.W.2d 236, 240 (Mo.App.E.D.1976); *State v. Turnbough*, 388 S.W.2d 781, 783 (Mo.Div. 2 1965).

Even if we were to reach the issue of submissibility of defendant's case, we would find that the state made a submissible case of arson in the second degree. A person commits that crime if he (1) knowingly damages a building (2) by starting a fire. Here, defendant's house burned. There was sufficient evidence for a jury to find that defendant caused the fire, considering (1) the testimony of his brother and sister-in-law indicating that defendant wanted someone to burn the house; (2) Mason's testimony that the fire was intentionally set; (3) the defendant's delinquency on his note and the pending foreclosure; and (4) the removal of items from the house the night the fire occurred, as well as eight days earlier. Point denied.

Defendant's next point is that "the trial court plainly erred to the point of manifest injustice by failing to instruct the jury on alibi." Defendant contends that he "gave proper notice of an 'alibi' defense and produced four witnesses establishing the location of defendant at and before the fire."

■ Defendant did not raise this claim of error in his motion for new trial so the issue has not been preserved for review. *State v. Porter*, 458 S.W.2d 256, 259 (Mo. Div. 1 1970). In order to obtain review, defendant must demonstrate that there was plain error. *State v. Fetty*, 654 S.W. 2d 150, 155 (Mo.App.W.D.1983). This court will not consider any matter dealing with instructions as plain error, unless it can be shown that the trial court has so misdirected or failed to instruct the jury on the law of the case so as to cause manifest injustice. *Porter* at 259.

■ An alibi instruction must be given by the trial court if it is requested. *State v. Webb*, 527 S.W.2d 728, 730 (Mo.App.E.D. 1975); MAI–CR 2d 3.20 and 3.22, Notes on Use. Here the defendant did not request such an instruction. A "trial court is under no duty to instruct on alibi unless requested to do so by the defendant." *State v. Paige*, 446 S.W.2d 798, 807 (Mo.Div. 1 1969). We find no manifest injustice by the trial court in failing to give an alibi instruction. Point denied.

Defendant next alleges that the trial court committed plain error in failing to include a paragraph in the verdict directing

instruction on arson. Specifically, he refers to the failure to include a paragraph patterned after paragraph Third of MAI-CR 2d 23.08, which says:

> (Third, that [*insert one of the following, omitting the number and brackets* ]
>
> [1] some (person) (persons) (person or persons) other than defendant had a possessory, proprietary or security interest in the damaged building, (and defendant did not believe otherwise, as submitted in Instruction No. ____,) (and)
>
> [2] some (person) (persons) (person or persons) other than defendant had a possessory, proprietary or security interest in the damaged building, but that (such person) (all of such persons) had not consented to defendant's conduct, (and defendant did not believe otherwise, as submitted in Instruction No. ____,)

■ Defendant argues that since there was evidence that May had a security interest in the property, Notes on Use 3 to MAI-CR 2d 23.08 mandates that this paragraph be included. Since it was not, he argues that error was committed and this court must determine the prejudicial effect of this failure.

In order to understand why it was not error to omit this paragraph, we need to briefly look at the statutory definition of arson in the second degree. Section 569.-050.1 says a person commits arson when he knowingly damages a building or inhabitable structure by starting a fire. It should be observed that nothing is said about ownership of the building, i.e., that it has to be a building owned by another. If the statute ended there, a farmer could never rid his land of an old building by burning it without being guilty of arson, nor could landowners allow old houses to be burned for fire department training. Thus, the statute went on in § 569.050.2 to provide that a person does not commit this crime if (1) no one else has any interest in the building (or if others do, they consented to the burning) *and* (2) the person's sole purpose in destroying the building was for a lawful and proper purpose. Section 569.-050.3 then says that the defendant has the burden of injecting the issue permitted by § 569.050.2, i.e., burning one's own property for a lawful and proper purpose.

When the phrase "the defendant has the burden of injecting the issue" is used, § 556.051 says it means that (1) the issue is not submitted to the jury unless supported by the evidence and (2) any reasonable doubt on the issue requires a finding for the defendant. Generally speaking, such a situation was denominated in MAI-CR 2d as a "special negative defense," and, although that label is less than accurate, it has been continued in MAI-CR 3d. See MAI-CR 3d 304.11 E.

Thus, to submit paragraph Third to the jury here, the defendant had the burden of injecting the issue. Evidence needed to be before the jury that no one else had a possessory, proprietary, or security interest in the house; of course, as defendant admits, someone else did have such an interest, namely May, who held a promissory note and a deed of trust. Further, evidence would be needed that the burning was for a lawful and proper purpose; no such evidence was presented. Thus, there was no error, plain or otherwise, in failing to include a paragraph Third in the verdict director. Point denied.

Defendant's next point is:

> The defendant had some three different lawyers through the trial stage. A change of venue as a matter of right was never taken. Subsequent motions to disqualify the judge, the prosecutor, and the jury panel or to individually voir dire a jury panel, intending to correct the lack of change of venue, were overruled, withdrawn, and abandoned. Defendant was faced with a local jury in a small town that was prejudiced against him. The trial court's overruling and failure to rule on said motions constituted plain error resulting in manifest injustice to the defendant.

■ This point does not comply with Rule 30.06(d) which requires that the "points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous, ..." Thus, this point could be denied on that basis alone. *Thummel v. King*, 570 S.W.2d 679, 685–687 (Mo. banc 1978); *Kolocotronis v. Ritterbusch*, 667 S.W.2d 430, 434 (Mo.App.W.D.1984).

We have, however, examined the record as to each motion. The motion for change of judge was denied December 3, 1986, after a colloquy between the court and counsel. The defendant presented no evidence in support of his motion; the motion was untimely in that it was filed approximately nine months after the trial judge was designated (Rule 32.07(c)); and the record discloses no error in the denial of the motion. Further, defendant had previously exercised his right to disqualify one judge when he disqualified Judge Edward Hodge on January 8, 1986. Rule 32.09(a) allows a party only one change of judge.

An amended motion to disqualify the prosecutor was filed on December 3, 1986. On December 16, 1986, defense counsel "confessed" the motion and advised the court it did not have to hear it. Thus, there was nothing for the trial court to rule on and therefore no complaint can be made in this regard.

A motion to disqualify the jury panel or in the alternative to allow defendant to individually voir dire all prospective jurors was filed November 25, 1986. On December 3, 1986, defense counsel said, "I'm going to at this time I'm going to withdraw that motion." After the trial court said, "Okay," defense counsel said, "Or better yet, your honor, I'm just going to allow you to rule without argument on that motion." The court then denied it. No evidence was presented on the motion to disqualify the jury and therefore the trial court did not err in denying it. As to that portion of the motion requesting individual voir dire, no error appears in denying that request because the trial court is vested with broad discretion in controlling voir dire examination, and we find no abuse of that discretion. *State v. Yowell,* 513 S.W.2d 397, 403 (Mo. banc 1974). Point denied.

Defendant's final point is that the trial court erroneously sustained the prosecutor's objections during defendant's cross-examination of Deborah Maxson which related to: (1) "a prior accusation between the witness and the defendant;" and (2) "the question of the witness being a police informant." Defendant argues that be-

cause of the trial court's ruling, he was "unable to properly impeach this key state's witness" to his material prejudice and detriment.

Defendant, on November 25, 1986, filed a motion in limine stating that he intended to impeach Deborah Maxson for bias and prejudice by bringing up that she had previously alleged that defendant had sexually assaulted her. He sought an order that would prevent the state, in response to his impeaching questions, from "introducing any extrinsic evidence to prove up any uncharged misconduct by the defendant." Defendant's motion in limine was discussed during pre-trial hearings on December 3, 1986, and continued to the morning of trial. However, it was not brought to the attention of the court the morning of trial, and thus was never ruled.

Although no ruling was made on the motion, it is of no consequence. For, ordinarily, even the denial of a motion in limine preserves nothing for appeal. *State v. Hurst,* 612 S.W.2d 846, 856 (Mo.App.E.D. 1981). A timely objection to the evidence is required at trial to preserve the point.

At trial, Deborah Maxson was cross-examined, in pertinent part, as follows:

Q. Okay. Now, Debbie, you very much dislike Dan Maxson, don't you?

A. I dislike him for what he did, yes.

Q. You disliked him before that, didn't you?

A. No, that's not true.

Q. It's not true—

A. Definitely.

Q. —that you hated this man?

A. No, it's not.

The prosecutor then objected on the ground that it was a collateral source. At a bench conference, defense counsel indicated he wanted to go into some prior situations to show that she hated defendant. The court said that it looked like it would lead to the allegation of sexual assault, and that he might be opening the door. However, the trial court did not sustain any objection, nor direct counsel not to ask any questions, on this subject. Defense counsel did not ask any further questions on this subject, no objection was ruled, and therefore no error was committed.

■ As to the second part of this point, Deborah Maxson was asked on cross-examination:

Q. Now, did he—You've supplied information to the police in the past regarding criminal activities in the area of Wright City; isn't that true?

The prosecutor objected and requested that they approach the bench. The trial judge, after some discussion, said he was sustaining the objection to the generalized question, "Have you ever given any information to any police about anything?" The trial judge indicated that he would not allow a "fishing expedition about anybody else on some other crime" because it wasn't relevant. However, he indicated that she could be asked about this defendant and this crime. Thereafter, she testified about what information she gave to the police concerning this crime.

In a criminal case, the question of relevancy is a determination left to the trial court's discretion, because it is in a better position to weigh the probative value of the evidence against its possible prejudicial effect. *State v. Allbritton*, 660 S.W.2d 322, 328 (Mo.App.E.D.1983). In the absence of clear abuse of discretion, an appellate court will not interfere with the trial court's ruling on the admission or exclusion of evidence. *State v. Clark*, 711 S.W.2d 928, 932 (Mo.App.E.D.1986).

We find no abuse of discretion by the trial court. Defense counsel was permitted to ask the witness about her informing the police in regard to the defendant, and he did so. Further, we are unable to see how testimony about other criminal activities would tend to prove or disprove a fact in issue or to corroborate evidence which is relevant and which bears on the principal issue, which is the test for relevancy. *Id.* at 932. Point denied.

The judgment is affirmed.

SIMON, P.J., and CRANDALL, J., concur.