STATE of Missouri, Respondent,

v.

Randy BELCHER, Appellant.

No. 16070.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 16, 1991.

Motion for Rehearing or Transfer to Supreme Court Denied Feb. 5, 1991.

Application to Transfer Denied
April 9, 1991.

Kenneth C. Hensley, White, Allinder, Grate & Hensley, Independence, for appellant.

William L. Webster, Atty. Gen., John P. Pollard, Asst. Atty. Gen., Jefferson City, for respondent.

HOGAN, Judge.

By indictment presented March 9, 1988, a grand jury charged defendant Randy K. Belcher with kidnapping in violation of § 565.110, RSMo 1986, assault in the first degree in violation of § 565.050, RSMo 1986, and armed criminal action in violation of § 571.015, RSMo 1986. A jury found the defendant guilty on all three counts and assessed his punishment at imprisonment for 15 years for kidnapping, 15 years for first-degree assault, and 400 years for armed criminal action. The defendant appeals. We affirm.

The defendant's victim, a fourteen-year-old female to whom we shall refer as K., was at her home near Rushville about 4:00 p.m. on September 29, 1987. K. lived with her mother, her stepfather, and her brother John. The defendant's mother owned a residence next door. While K. and her brother were watching television, defendant's father, Robert Belcher, came to the door and asked John to help him locate a

piece of wood that he, Robert Belcher, had lost from his truck earlier in the day. Shortly thereafter the defendant appeared at K.'s residence and asked her to help him with a broken water pipe. K. went next door with the defendant. After K. got inside the defendant's residence, the defendant locked the door and told K. he had lied about the plumbing. The defendant told K. "not to worry ... and that [they] were just going to go party for a couple of days and then [K. would be] back home." The defendant was smoking something; K. thought it was "crack."

Robert Belcher returned in a short time and joined K. and the defendant. The defendant showed K. a "little black box" which is referred to in the transcript as a "stun gun." K. was told the defendant would use the "stun gun" if she "tried to run or scream or tried to get away." The defendant and his father then put K. in the back of a pickup truck which had been fitted with a camper shell. K. could not see where she was being taken, but the pickup was driven some distance and was stopped at a house. K. was taken to a bedroom and told to lie down. After she had been in the house about an hour, defendant and his father put K. back in the truck. The defendant and his father then took K. to a motel room. K. was told to go into the bathroom and wait. When K. came out of the bathroom, the defendant had attached a VCR and a video camera to the television set. The defendant's father was not then present. The defendant told K. to sit on a bed, and informed her that they "were going to get high and ... have a little bit of fun, then [she] could go home." The defendant then began smoking his pipe, and required K. to inhale whatever substance was in the pipe.

The defendant then required K. to disrobe and recorded her actions with the video camera. The defendant then took several polaroid pictures of his victim lying nude on the motel bed. K. was then required to go to the bathroom and take a shower. The defendant followed K. into the shower where he touched her breasts and genitals and made her touch his penis. After the two got out of the shower, the defendant "put [K.] on one of the beds and made [her] have sex with him." He also forced K. to commit an act of oral sodomy upon him. Subsequently, the defendant's father returned, defendant left, and while the defendant was gone his father raped K. twice.

The following morning, September 30, 1987, the Belchers obtained another automobile. Some time after noon the defendant's father took K. to this automobile, "put [her] in the back seat and ... made [her] scrunch down." The defendant drove for about 15 minutes and then pulled onto a dirt road. The defendant and his father forced K. into the trunk of the car. After they had driven the car for another 30 minutes, the Belchers stopped again. K. was, in her words, "pulled out of the trunk." As she looked around, K. realized that she was close to her home, which was near the Missouri River.

The Belchers started to push K. into the river, but K. "started to scream" and promised she would tell no one what had happened. K. was put back in the trunk, and the Belchers drove about for two, possibly three, hours. They stopped at a different location on the river, and K. was again "pulled out" of the trunk. One of the Belchers "spray[ed] something in [K.'s] face." Whatever the spray was, it hurt K.'s eyes and made her face numb. The Belchers finally pushed K. into the river. The water helped K. recover her vision and she began to get out of the river. Defendant's father extended his hand, told K. "it was a mistake that [she] fell in" and offered to help her get out of the water. As the senior Belcher was helping K. out of the water, she noticed he had a metal pipe in his hand. Belcher hit K. with the pipe. She was stunned but did not go under the water. Instead, she floated out into the river. She then "turned around" and saw the defendant "pointing a gun right at [her]." The defendant fired several times; K. believed one of the shots grazed her. K. then swam as far as she could under water. When she finally resurfaced, K. "turned around and looked and neither of [the Belchers] were looking at [her] any

more, they were walking back towards the car." K. then swam down the river to a tower which she recognized as being close to her house. She was eventually able to get out of the river and to a farm home, where she found some one to help her. Other facts will be noticed in the course of the opinion.

■ The defendant has briefed and argued eight assignments of error in this court. His point V, slightly paraphrased, is that the trial court erred in refusing to grant his motion in limine and in failing to sustain his numerous objections to evidence of other crimes. We have doubt that this point is properly preserved for review. Some time before trial, the defendant filed a motion in limine seeking to exclude all evidence or testimony "of other crimes committed in other counties." Otherwise, the defendant sought to exclude what he called "evidence of drug usage and drug paraphernalia" and "certain statements, testimony and undercover investigation of Robert Belcher in connection with charges pending against him ... for the solicitation of the murder of [K.]." Some time prior to trial the court took up this motion and others the defendant had filed, but concluded that the matters addressed by the motions in limine could be considered immediately prior to the trial. Several preliminary matters were ruled on immediately prior to trial, but we are not directed to any specific ruling on the motion in limine just quoted.

During K.'s direct examination, she was asked about the defendant's use of a bottle pipe; she replied that the pipe offered in evidence appeared to be the pipe defendant used to smoke what she described as "crack." At this point, counsel for defendant reminded the trial court that a motion to exclude evidence of other crimes had been filed and asked that "the record show a continuing objection." The court replied that it didn't believe it could grant a continuing objection and counsel was instructed to object at the time evidence of other crimes was offered. Counsel agreed.

Subsequently the State introduced evidence and elicited testimony indicating that the defendant had committed several crimes other than those with which he was charged. Some of the evidence to which objection is now made was received without objection; other evidence, e.g., the "stun gun," was received over the defendant's objection. Generally, it is true that in order to preserve an objection raised by motion in limine to exclude evidence, the defendant must object at the time the evidence is offered. This is true because a trial court's ruling on a motion to exclude or suppress evidence is, in a sense, interlocutory. The real damage is not done until the evidence is introduced or otherwise brought to the attention of the jury. A court can and sometimes does change its ruling on the basis of information received after the motion in limine is ruled upon. *State v. Howell*, 524 S.W.2d 11, 19[6] (Mo. banc 1975); *State v. Brown*, 749 S.W.2d 448, 451 (Mo.App.1988); *State v. Simpson*, 718 S.W.2d 143, 147 (Mo.App.1986). However, a discussion of the function of a motion in limine to exclude evidence and the necessity of a contemporaneous objection is not called for in this case. We are convinced that the evidence to which the defendant now objects was admissible.

■ As a general rule, a criminal defendant has a right to be tried only for the crime or crimes with which he is charged; the admission of evidence of other offenses unrelated to the cause on trial infringes that right because the admission of evidence of the commission of other crimes may result in a conviction actually based upon crimes of which the defendant is not accused. *State v. Shaw*, 636 S.W.2d 667, 671 (Mo. banc 1982), cert. denied 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982); *State v. Trimble*, 638 S.W.2d 726, 732[3] (Mo. banc 1982). There are exceptions, however, and our courts have consistently held that evidence of other crimes is admissible to prove the crime charged when it tends to establish motive, intent, the absence of mistake or accident, a common scheme or plan embracing the commission of two or more crimes so related that proof of one tends to establish the other, or the identity of the person charged with the commission of the crime on trial. *State v.*

*Shaw*, 636 S.W.2d at 672; *State v. Reese*, 364 Mo. 1221, 1226, 274 S.W.2d 304, 307 (Mo. banc 1954). In this case, the evidence of commission of other crimes was admissible to show motive. Two of the offenses with which the defendant was charged involve specific mental states. A person is guilty of first-degree assault if he attempts either a) to kill another person, or b) to cause serious physical injury to another person. See *The New Missouri Criminal Code: A Manual for Court Related Personnel*, § 10.9 (1987) (hereinafter *Manual*). A person commits the crime of kidnapping if he 1) unlawfully confines another for a substantial period of time; 2) without the victim's consent; 3) with the purpose of, among other things, inflicting physical injury on or terrorizing the victim. *Manual*, § 10.16. When the State has the burden to prove a specific purpose, in this case an attempt to kill K. or cause serious physical injury to her, and further, inflicting physical injury on her or terrorizing her, it is competent to establish that element of the crime charged by showing the commission of other offenses. Cf. *State v. Kenley*, 693 S.W.2d 79, 81–82[4, 5] (Mo. banc 1985). The defendant's gratification of his deviate sexual desire upon the person of the victim bears on and tends to explain his reason for detaining K. in a motel room. The defendant's commission of other crimes also bears on and tends to explain his motive for firing a pistol at K. as an attempt to intimidate or eliminate K. as a potential complainant. It has many times been held that conduct before and after the commission of the crime charged is relevant when it relates to the charged crime. *State v. Kenley*, 693 S.W.2d at 82. The evidence showing defendant's commission of other crimes was admissible and was properly received. The defendant further argues that even if the evidence of his commission of other crimes was relevant, the resulting prejudice outweighed the relevance of the evidence. The determination whether the relevance of such evidence outweighs any prejudice to the defendant lies within the discretion of the trial court.

*State v. Bannister*, 680 S.W.2d 141, 147 (Mo.banc 1984); *State v. Shaw*, 636 S.W.2d at 672[6]. We find no abuse of that discretion. The point is without merit.

■ The defendant's third and fourth assignments of error are assertions that the trial court erred in refusing to suppress evidence seized at 7507 N.W. 82nd Street, Kansas City, Missouri and in refusing to suppress evidence seized at Room 217, Motel 6, 8230 N.W. Prairie View Road, Kansas City, Missouri because, in each case, "the search warrant for said address was issued based upon an application and affidavit that did not contain a sufficient statement of probable cause." Identical statutes and precedents are cited in support of both points. Counsel has not undertaken to demonstrate the particular respect in which the applications and affidavits for search warrants are deficient beyond suggesting that the applications and affidavits "do not state facts sufficiently for a magistrate to determine probable cause to search said premises." Defendant has not undertaken to advise this court what should have been stated but was omitted, and inasmuch as defendant's points III and IV do not undertake to state concisely "wherein and why" the applications and affidavits were insufficient, we might fairly ignore the points on that basis alone. Rule 30.06(d); *State v. Maxson*, 755 S.W.2d 277, 281[5] (Mo.App. 1988); *State v. Rainwater*, 602 S.W.2d 233, 236 (Mo.App.1980). We have concluded, however, that we should address points III and IV as we are given to understand them.

■ As to defendant's points III and IV, it may fairly be said that probable cause to search exists when, at the time the magistrate issues the warrant, there are reasonably trustworthy facts which, given the totality of the circumstances, are sufficient to lead a prudent person to believe that the items sought constitute fruits, instrumentalities, or evidence of a crime and will be present at the time and place of the search. *State v. Erwin*, 789 S.W.2d 509, 510 (Mo. App.1990).[1] In this court, the defendant

---

**1.** See: *Project, Eighteenth Annual Review of*

*Criminal Procedure: United States Supreme*

asserts that neither application or affidavit states any good reason *why* the affiant believes fruits, instrumentalities or evidence of crime will be found on the premises described, particularly in the two affidavits. The argument is singularly without merit. It is not necessary that the grammar and syntax of an application for a search warrant, or an affidavit submitted in support thereof, be above reproach or even correct, as long as the application or affidavit, fairly read, states probable cause. *State v. Erwin*, 789 S.W.2d at 511[4, 5]. Given a fair reading, the affidavits executed in support of the applications for both warrants state that the affiant believes "instrumentalities" or evidence of crime will be found at the places designated because the victim of the crimes indicated as much. When the information upon which the warrant is based comes from one who claims to have witnessed a crime or to have been the victim of a crime, the information carries with it indicia of reliability and is generally presumed to be reliable. *People v. Hubbard*, 184 Colo. 225, 519 P.2d 951, 953[1] (1974); *State v. Ross*, 561 So.2d 1004, 1009[8–10] [11] (La.App. 1990); 1 W. LaFave, *Search and Seizure* § 3.4(a) pp. 717–18 (1987). Defendant's points III and IV are without merit.

■ Another assignment of error briefed and argued by the defendant is that the trial court erred in refusing his tendered instruction on the defense of alibi, which read thus:

"One of the issues in this case is whether the defendant was present at [K.'s] residence on the afternoon of September 29, 1987. On that issue, you are instructed as follows:

1. The state has the burden of proving beyond a reasonable doubt that the defendant was present at the time and place the offense is alleged to have been committed.

2. If the defendant was parked at North Forest at or near 1102 Northeast 67th Street, Gladstone, Clay County, Missouri on the afternoon of September 29, 1987 at 4:10 o'clock p.m., or if you do not find and believe from the evidence beyond a reasonable doubt that the defendant was present at [K.'s] residence on the afternoon of September 29, 1987, then you must find the defendant not guilty in this case."

The trial court refused to give this instruction, but gave and read a properly adapted version of MAI–CR 3d 308.04 as Instruction No. 8. The defendant's claim of prejudice is difficult to follow. We agree that an accused is entitled to an instruction on the defense of alibi, if the evidence supports such an instruction. See, e.g., *State v. Jones*, 735 S.W.2d 87, 90[9] (Mo.App.1987). However, the defendant suggests—quite mistakenly—that if the jury had found he was not present when K. was abducted, this would necessarily have exonerated him completely. His argument in this respect is that if he was elsewhere during part of the time one of the offenses with which he was charged—kidnapping—was being committed, he was entitled to an acquittal. Section 565.110.1 provides that:

"A person commits the crime of kidnapping if he unlawfully removes another without his consent from the place where he is found *or* unlawfully confines another without his consent for a substantial period, . . . ." (Emphasis supplied.)

■ As we understand this statute, it provides alternative methods of committing the offense denounced. The Comment to the statute states that § 565.110 is based on § 212.1 of the Model Penal Code. The Comment upon § 212.1 of the Model Penal Code states that § 212.1 defines kidnapping to include unlawful confinement of another "for a substantial period in a place of isolation." A place of "isolation" within the meaning of § 212.1 can be any place wherein the circumstances of detention make discovery or rescue unlikely. Model Penal Code, Part II, § 212.1, p. 224 (1980). We conclude that the crime denounced by § 565.110 may consist either in the asporta-

tion or confinement of the victim. While we do not attempt to state how much movement or confinement is necessary as a proper basis for a charge of kidnapping, it seems obvious to us that K. was effectively confined from the time she was abducted until she was released. The intent of § 565.110 is similar to former § 559.240, RSMo 1969, and we think it may fairly be said that the offense, where the person seized is confined for a substantial period and the confinement is not wholly incidental to the commission of another crime, is a continuing offense. *State v. Dodson,* 556 S.W.2d 938, 950 (Mo.App.1977). Alibi is not a defense unless the defendant was elsewhere during the entire time the crime was being committed. *State v. McLane,* 55 S.W.2d 956, 958[3] (Mo.1932); *State v. Kimball,* 624 S.W.2d 158, 159[1] (Mo.App. 1981); *State v. Franklin,* 591 S.W.2d 12, 14[2] (Mo.App.1979). The defendant's evidence of alibi was that he was seen at another place about the time K. was abducted. Such evidence would not support the giving of the instruction requested by the defendant.

The complete lack of merit in this point becomes apparent when one considers that the defendant was charged with three crimes and his guilt or innocence of all three crimes was submitted to the jury. Paragraph 2 of tendered Instruction B directs the jury to find the defendant not guilty—without reference to any particular charge—if it found the defendant was not present when K. was abducted on September 29, 1987. Instruction No. 11 submitted defendant's guilt of the crime of first-degree assault upon the person of K. on September 30, 1987; another instruction submitted defendant's guilt of the offense of armed criminal action and a finding of guilt of that offense is conditioned upon a finding that the defendant committed the offense of first-degree assault on September 30. Defendant's tendered instruction directed the jury to acquit him if he was

not present at the time K. was abducted but made no specific reference to the instructions submitting first-degree assault and armed criminal action. Such contradictory instructions would have misled or positively misdirected the jury. The alibi instruction tendered by the defendant was not supported by the evidence and positively misstated the law. It was properly refused.

■ The defendant further argues that § 571.015, proscribing armed criminal action, is unconstitutionally vague. This point was not presented in the trial court until the defendant filed his motion for new trial, and counsel admitted as much.[2]

If the point had been timely raised and preserved for review, this court would be without jurisdiction. As the record clearly demonstrates, however, the defendant raised no question concerning the constitutionality of § 571.015 at any time before he filed his motion for new trial. Inasmuch as no constitutional challenge to the statute on the basis of vagueness was made prior to the motion for new trial, the constitutional issue has not been preserved for review. *State v. Richardson,* 519 S.W.2d 16, 17–18[2] (Mo.1975). Because this issue has not been preserved for review, we can neither consider the issue nor transfer the appeal to the Supreme Court. See *State v. Hegwood,* 558 S.W.2d 378, 381[9] (Mo.App. 1977). Although the opinion is not definitive, the United States District Court for the Western District of Missouri has ruled that § 571.015 is not unconstitutionally vague. *Grayson v. Jones,* 704 F.Supp. 978, 979–80[2] (W.D.Mo.1989). However that may be, the point is not preserved for review on this appeal.

■ Another assignment of error briefed by the defendant is that the trial court erred and abused its discretion in refusing to sequester the jury. At the beginning of the trial, counsel for defendant advised the court that the case had

2. R. 886: "This [objection that § 571.015 is unconstitutionally vague] wasn't raised at the arraignment level or earlier, I understand that. *It's a constitutional issue that should have been raised.* It is raised in the motion for new trial and I'd like the Court to consider it. It's my belief that at some point the Missouri Supreme Court may want to re-examine this...." (Emphasis supplied.)

received a great deal of publicity in the Kansas City area and expressed his concern that "as the week goes by the press coverage may intensify and while the jury will be instructed, if they're not sequestered ... I'm not sure that's an adequate safeguard in a case that received this much media attention." The trial court replied that sequestration of the jury was a discretionary matter. The court had seen some "information concerning the trial" in the morning newspaper, but was of the opinion that the newspaper article contained no information different from that the jury would obtain during the voir dire. The court refused to sequester the jury, advising counsel that he might renew his request. Counsel renewed his request to sequester the jury after newspaper articles concerning the trial did in fact appear. These newspaper articles have been filed here as "exhibits" attached to the defendant's brief. We should remind counsel that an appellate court is limited to a consideration of matters which appear in the record or are submitted as part of the record, and exhibits attached to a brief may not be used to expand the record. *State v. Brown,* 744 S.W.2d 809, 812[3] (Mo. banc 1988); *State v. Phillips,* 596 S.W.2d 752, 755 and n. 1 (Mo.App.1980). The articles which appeared are not properly before the court and we refuse, in this case, to exercise our discretion to examine matters dehors the record. When the defendant again moved the court to sequester the jury because the panel *might* be exposed to some media coverage of the trial, the court interrogated the jury and the record of that interrogation indicates no juror had been exposed to any news coverage of the trial. Further questioning near the end of the trial indicated the jury had had "no difficulty" following the court's instruction[3] concerning avoidance of publicity or ex parte discussion of the case.

As with most of his other points, the defendant's theory has considerably outrun the record. If there is no evidence that the jury was aware of any publicity occurring during the trial, there is no basis for a

holding that the defendant was prejudiced. *State v. Coleman,* 460 S.W.2d 719, 728 (Mo. banc 1970); *State v. Moore,* 499 S.W.2d 826, [1, 2] [3] (Mo.App.1973). The point is without merit.

The defendant further contends that the trial court erred in refusing to declare a mistrial when the prosecuting attorney, during voir dire, asked the members of the panel if any of them knew any of the witnesses who were expected to testify for the State and then asked if any member of the panel was acquainted with the defendant. Counsel's objection, slightly paraphrased, was that he thought the prosecuting attorney's questions amounted to a comment upon the defendant's right to remain silent.

This argument, in our opinion, is so strained and tenuous as to require only a summary comment. In *State v. Shanz,* 716 S.W.2d 472, 475–76 (Mo.App.1986), this court reviewed a number of cases dealing with comments upon an accused defendant's right to refuse to testify. It was noted that both Rule 27.05(a) and § 546.270 prohibit comment upon the accused's right to remain silent. Repeating what was held in that case would serve no purpose here. The prosecuting attorney's interrogation was not intended as a comment upon defendant's right to remain silent and no reasonable construction of the record can make it such. The assignment of error is without substance.

The defendant's final point is that the trial court erred and demonstrated partiality against the defendant by interrupting counsel during his opening statement to admonish him to avoid argument in making that statement.

During counsel's opening statement, the State objected several times to argumentative statements made by defendant's attorney. The parts of the opening statement to which objection was made were argumentative, and the State's objections were properly sustained. Counsel for defendant, having been advised not to argue the merits of the case in his opening statement,

---

**3.** Apparently, the "instruction" referred to in the briefs is MAI–CR 3d 300.04.

proceeded to say that "there is significant areas of doubt about what [K.] says —." The trial court requested that counsel "please avoid arguing." We may fairly dispose of this point by noting that argument is not the proper function of an opening statement, and control of the opening statement is within the sound discretion of the trial court. *State v. Arrington,* 375 S.W.2d 186, 190–91[5] (Mo.1964); *State v. Ivory,* 609 S.W.2d 217, 222, 12 A.L.R.4th 731, 739 (Mo.App.1980). We find no abuse of discretion in correcting defendant's counsel during his opening statement.

We find no prejudicial error in any respect briefed or argued in this court; accordingly the judgments and sentences appealed from are in all respects affirmed.

FLANIGAN, P.J., and MAUS, J., concur.

SHRUM, J., not participating.