IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT   KNOXVILLE

NOVEMBER 1998 SESSION

FILED

February 4, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | No. 03C01-9802-CR-00082 |
| | ) | |
| Appellee | ) | |
| | ) | Sullivan County |
| vs. | ) | |
| | ) | Honorable R. Jerry Beck, Judge |
| **JAMES H. CRAWFORD,** | ) | |
| | ) | (Reckless Aggravated Assault) |
| Appellant. | ) | |


FOR THE APPELLANT:

GALE K. FLANARY (on appeal)
Assistant Public Defender
P.O. Box 839
Blountville, TN 37617

LARRY R. DILLOW (at trial)
Attorney at Law
421 E. Market St.
Kingsport, TN 37660

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter

CLINTON J. MORGAN
Assistant Attorney General
Criminal Justice Division
425 Fifth Ave. North
2d Floor, Cordell Hull Bldg.
Nashville, TN 37243-0493

H. GREELEY WELLS, JR.
District Attorney General

JOSEPH EUGENE PERRIN
Assistant District Attorney General
140 Blountville Bypass
P.O. Box 526
Blountville, TN 37617-0526


OPINION FILED: _____


**AFFIRMED**


JAMES CURWOOD WITT, JR.
JUDGE


**OPINION**

The defendant, James H. Crawford, appeals pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure from two convictions for reckless aggravated assault as entered in the Criminal Court of Sullivan County. Reckless aggravated assault is a Class D felony, and the defendant is currently serving a six-year sentence in the Department of Correction.[1] In this appeal, he challenges the sufficiency of the evidence and contends that the trial court erred in ordering him to serve the two three-year sentences consecutively. We affirm the judgment of the trial court.

The assaults in this case arose out of the defendant's divorce from his wife, Deronda Baker. The pair divorced in November, 1995 after a marriage of nine years. The divorce court awarded Ms. Baker the mobile home in which they had lived. It was located near the residences of the defendant's father, sister and brother. The divorce, apparently, was a difficult one, and the defendant and his family were bitter not only about Ms. Baker's ownership of the trailer but also because Ms. Baker had charged the defendant with raping her daughter. The defendant's family pooled their resources and purchased the trailer from Ms. Baker sometime before the incident which led to these convictions.

Early on the evening of March 9, 1996, Ms. Baker and her niece, Linda Sue McClain, arrived at the trailer in a full-size, blue Chevrolet pickup that belonged to Ms. McClain's husband. As they arrived, they saw the defendant watching them from the doorway of his father's house. The two women entered the trailer and packed some boxes of groceries and other items that belonged to Ms. Baker. Because they wanted to avoid any confrontations, they kept a close eye on the yard and on the road. Shortly after their arrival, they noticed the defendant leave his father's house in his S-10 pickup truck. He drove very slowly down the road in front of the trailer, and then, about 45 minutes later, he returned, once again driving very slowly. They decided to finish quickly and come back another time.

---

[1] The defendant was indicted for two counts of aggravated assault.

2

They loaded a kitchen table, four chairs, a rug, and several boxes in the back of the pickup and were seated in the truck when they saw Victor Crawford, the defendant's father, drive down the road. As Ms. McClain turned the truck around in the driveway, the defendant's S-10 pickup came down the driveway to the road. They waited to let the S-10 go by, but the vehicle stopped at the top of the driveway and its headlights were extinguished. When another car came down the road, they decided to follow after it as quickly as possible.

When they pulled out onto the hard top, the defendant's S-10 pickup came right up onto the bumper of the McClain truck in a matter of seconds and followed them closely. The S-10's headlights were continually switched from bright to regular. Ms. Baker called 911 on her cell phone while Ms. McClain contacted her husband on her CB radio. Ms. McClain continued to accelerate in an unsuccessful attempt to increase the distance between the two vehicles. At one point, she ran a stop sign rather than try to stop. The S-10 was following so closely that McClain could not see its headlights in her rearview mirrors. Although both women identified the S-10 as belonging to the defendant, Ms. Baker was unable to identify the driver of the truck. McClain, however, testified that when the S-10's lights were on high beam, its lights reflected back off the bumper of the larger truck and she was able to identify the driver as the defendant.

The S-10 continued to tail-gate down the narrow, twisting road for approximately four miles and "nudged" the bumper of the larger truck three times. As the larger truck rounded a curve, the S-10 attempted to pull along side and force it off the road. Ms. McClain prevented this maneuver by pulling into the center of the road. She continued to drive straddling the center line until the defendant finally turned off at an intersection. Later, Ms. McClain pointed out to the police three black marks on the rear bumper of her husband's truck that she believed were caused by the S-10.

3

The police took scrapings from the bumpers of both trucks and submitted them for testing. At trial, a TBI forensic specialist testified that the black marks on the McClain vehicle and the sample from the defendant's truck consisted of three layers of paint. In each case, the bottom layer was brown, the center layer was beige, and the top layer was black. The samples were also consistent as to color, texture, type, and inorganic composition.

Because the defendant presented an alibi defense, time became a critical factor in the case. Ms. Baker and Ms. McClain estimated that they arrived at the trailer at about 5:00 p.m. on the evening in question. Ms. Baker estimated that Victor Crawford drove down the road at about 6:55 p.m., and that they pulled out of the driveway just before 7:00 p.m. Ms. Baker placed her call to 911 at 7:04 p.m. Victor Crawford testified that he left to go dancing that Saturday night at about 5:45 p.m., and the defendant and three other witnesses testified that the defendant walked across the field to his sister's house at about 6:15 p.m. that evening and did not leave until nearly 9:00 p.m.

Based on this evidence, the jury acquitted the defendant of two counts of aggravated assault but convicted him of the lesser-included offense of reckless assault. The defendant now argues that the evidence is not sufficient to prove that he was the one who committed the offenses. We disagree.

When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 317, 99 S. Ct. 2781, 2789 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked

and replaces it with one of guilt, a convicted defendant has the burden of demonstrating on appeal that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992).

In determining the sufficiency of the evidence, this court should not reweigh or reevaluate the evidence. State v. Matthews, 805 S.W.2d 250, 253 (Tenn. Crim. App. 1990). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. State v. Cabbage, 571 S.W.2d 833, 835 (Tenn. 1978). This court may not substitute its inferences for those drawn by the trier of fact from the evidence. Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856, 859 (1956); Farmer v. State, 574 S.W. 2d 49, 51 (Tenn. Crim. App. 1978). It is the appellate court's duty to affirm the conviction if the evidence, viewed under these standards, was sufficient for any rational trier of fact to have found the essential elements of the offenses beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 317, 99 S. Ct. 2781, 2789; State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); Tenn. R. App. P. 13(e).

To convict a defendant of reckless aggravated assault the state must prove beyond a reasonable doubt that the defendant either recklessly caused serious bodily injury to another or recklessly used or displayed a deadly weapon and, as a result, caused bodily injury or caused another to reasonably fear imminent bodily injury. Tenn. Code Ann. §§ 39-13-101(a)(1),(2), -102(2)(A)(B) (1997). In this case, neither victim was injured; therefore, the state was required to demonstrate that

    1.    the defendant acted recklessly

    2.    in his use of a deadly weapon,

    3.    and as a result, caused the victims to reasonably fear imminent bodily injury.

5

Tenn. Code Ann. § 39-13-101(a)(2), - 102(2)(B) (1997).

In this appeal, the defendant does not dispute that the driver of the truck acted recklessly and that the truck was a deadly weapon when used as described in the victims' testimony. He does not contend that the victims' fear of imminent bodily injury during the four mile chase was unreasonable, nor does he deny that the truck involved was his. He argues that the proof does not demonstrate that he was the driver of the vehicle. He bases his argument on his own denial of participation and the alibi witnesses who testified on his behalf. He also contends that Ms. McClain's identification of him as the driver is highly suspect because her vision was impeded by the Chevrolet sign on the rear window and her attempts to drive the winding road at a high rate of speed while talking on a CB radio. He also points to the bitterness between his family and his ex-wife as an explanation for the victims' description of the incident.

The jury, however, rejected the defendant's alibi defense and accredited the testimony of the victims. The forensic specialist's testimony provided strong circumstantial evidence linking the paint on the defendant's bumper to the three black marks on the bumper of the McClain truck. The jury obviously did not believe the defendant when he testified that he had previously used his truck to push McClain's vehicle when it broke down. This court does not reweigh or reevaluate the evidence nor does it determine the credibility of the witnesses. State v. Matthews, 805 S.W.2d at 253. The victims testified that the defendant's pickup closely followed them down the road, bumped them three times, and threatened to run them off the road. One victim testified that she recognized the defendant as the driver. The state's evidence in this case is legally sufficient to prove the defendant's guilt beyond a reasonable doubt.

The defendant's also challenges the trial court's decision to impose consecutive sentencing because he is an offender "whose record of criminal activity

6

is extensive," Tenn. Code Ann. § 40-35-115(b)(2) (1997), and whose extreme recklessness indicates that he is a danger to the public. The defendant contends that because of the age of his previous convictions and his good employment and social record, concurrent sentences are appropriate.

Consecutive sentencing may be imposed in the discretion of the trial court upon a determination that one or more of the statutory criteria exist. See Tenn. Code Ann. § 40-35-115 (1997). Consecutive sentences, however, should not be routinely imposed even for the offender whose record of criminal activity is extensive. Tenn. Code Ann. § 40-35-115, Sentencing Commission Comments; State v. Taylor, 739 S.W.2d 227, 230 (Tenn. Crim. App. 1987); State v. Roscoe C. Smith, No. 01C01-9502-CR-00031, slip op. at 10 (Tenn. Crim. App., Nashville, Oct. 12, 1995). The Sentencing Reform Act requires the application of the sentencing principles set forth in the Act and a "principled justification for every sentence, including, of course, consecutive sentences." State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995). "The proof must also establish that the terms imposed are reasonably related to the severity of the offenses committed and are necessary in order to protect the public from further criminal acts by the offender." Wilkerson, 905 S.W.2d at 938; Tenn. Code Ann. § 40-35-102(1), (3)(B) (1997). If our review reflects that the trial court properly considered all relevant factors and the record adequately supports its findings of fact, this court must affirm the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In this case, the trial judge placed great weight on the fact that the defendant's past criminal history includes a conviction for involuntary manslaughter which resulted from the defendant's reckless driving as well as two convictions for driving under the influence, and a long list of other petty violations. We recognize that the defendant was convicted of involuntary manslaughter in 1968 when he was just 21 years old. His most recent conviction, prior to those in this case, is a 1982

Texas conviction for criminal mischief. However, nothing in the consecutive sentencing statute or our case law requires the trial court to consider only recent convictions when it makes its consecutive sentencing determinations. See, e.g., State v. Roscoe C. Smith, No. 01C01-9502-CR-0003, slip op. at 8 (Tenn. Crim. App., Nashville, Oct. 12, 1995) (a twenty-seven year record); State v. Timothy L. Russell, No. 01C01-9306-CR-99174, slip op. at 7 (Tenn. Crim. App., Nashville, June 2, 1994), perm. app. denied (Tenn. 1994) (ten prior convictions dating back to 1977); State v. Danny Boyd Cagel, No. 01C01-9301-CC-00006, slip op. at 3-4 (Tenn. Crim. App., Nashville, Nov. 18, 1993), perm. app. denied (Tenn. 1994) (twenty convictions dating back to 1972); Tenn. Code Ann. § 40-35-115 (1997). The record supports the trial court's finding that the defendant's record of criminal activity is extensive.

The record also satisfies the two Wilkerson requirements that the sentences be reasonably related to the severity of the offense and necessary to protect the public. Wilkerson, 905 S.W.2d at 938. Although the trial court recognized that the defendant maintained continuous employment and had the support of his family and the respect of many in the community, the court found that the defendant's continuing conduct exhibited extreme recklessness that posed a significant danger to the public. This defendant, who was angry and bitter over a divorce settlement, was willing to endanger the lives of the victims as well as those of any other motorist who might have been on the road that evening in order to intimidate his ex-wife and her niece and to vent his frustrations. This conduct coupled with his history of reckless behavior in general and his conviction for involuntary manslaughter in particular support the trial court's finding that consecutive sentences are reasonably related to the severity of the offenses committed and are necessary in order to protect the public from further criminal acts by the offender. See Wilkerson, 905 S.W.2d at 938.

8

For the reasons discussed above, we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT JR., Judge

_____
DAVID H. WELLES, Judge

_____
L. TERRY LAFFERTY, Special Judge