Ivle Ray MATNEY, Jr.,
Movant–Appellant,

v.

STATE of Missouri, Respondent–
Respondent.

No. 25483.

Missouri Court of Appeals,
Southern District,
Division One.

July 25, 2003.

Craig A. Johnston, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, and Karen L. Kramer, Asst. Attorney General, Jefferson City, for Respondent.

JAMES K. PREWITT, Judge.

Following a non-jury trial, Ivle Ray Matney, Jr., ("Movant") was convicted and sentenced on two counts of murder in the first degree, § 565.020, RSMo 1994, two counts of armed criminal action, § 571.015, RSMo 1994, and one count of robbery in the first degree, § 569.020, RSMo 1994. His convictions were affirmed on direct appeal in *State v. Matney*, 979 S.W.2d 225 (Mo.App.1998) (*Matney I*). Movant later filed a motion for post-conviction relief in which he alleged his appellate counsel was ineffective. This Court affirmed the denial of that motion in an unpublished order and memorandum opinion. *Matney v. State*, No. 23679 (Mo.App. filed March 30, 2001).

Here, Movant appeals the motion court's denial of his post-conviction motion for DNA testing. He alleges that the motion court clearly erred in denying his motion following an evidentiary hearing because he had established by a preponderance of the evidence that a reasonable probability existed that he would not have been convicted if exculpatory results had been obtained through the requested DNA testing and that he is entitled to relief, which he contends are the only requirements of § 547.035.7, RSMo Supp.2001.[1]

The complete set of facts may be found in *Matney I*, but will be summarized here. The bodies of Ethel and Cecil Phillips were discovered in their home on December 18, 1996. Their deaths were caused by blunt trauma and multiple stab wounds. At the scene, investigators found bloody footprints, which left impressions of footwear, near the bodies and bloody fingerprints or smudges on the back door. There was no sign of a forced entry; however, the back door was unlatched and did not have a two-by-four board across it, which the front door did and was the system by which the front door was secured.

Investigators determined that cash previously contained in a concealed manufactured floor safe in a bedroom was missing. The padlock to the safe had been cut. A smaller fire safe was also found, but its lock had not been breached and it contained envelopes of currency totaling $57,442. The keys to that safe were in Cecil's pocket.[2]

On December 17, 1996, Movant flagged down Pamela Dawn Slusher on her drive home from work, sometime after 11:20 p.m., and asked her to take him home. She did so and Movant gave her two $100 bills, which he peeled off a roll of money the size of a soda can.

Shortly after midnight that same night, Charles D. Tipton, a wrecker driver in

---

1. DNA is an abbreviation for deoxyribonucleic acid. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1976).

2. For simplicity sake, we will refer to the victims by their first names. We mean no disrespect.

Dexter, Missouri, received a call from Movant and subsequently pulled Movant's pickup out of a field. Movant paid the tow bill with a $100 bill. In the area where Movant's pickup had been stuck, investigators discovered $3,000 that was wrapped with tape in a paper that had "3,000" written on it. The handwriting on the paper was identified as Cecil's.

In interviews with police, Movant provided varying accounts of his whereabouts and actions on the evening of the murders. The only consistency in his story was that he had hit an icy spot on the roadway while driving his pickup and slid off the highway, which required him to need a tow truck. However, he noted that he walked home to call for the tow.

Investigators conducted a search of Movant's residence on December 25, 1996. When they arrived at his home, they found him washing out the inside of his pickup. Although water was dripping from the inside of the vehicle, the outside of the pickup was dry and quite muddy; it had not been washed.

Various items were recovered during the search, including $2,300 in cash, a receipt with Ethel's name on it, receipts and/or check stubs containing Cecil's name, a pair of stained gloves, and stained paper towels. Handwriting on the receipts/check stubs was identified as Cecil's. The items, other than the cash, were found in a garbage can, which also contained items with Movant's name on it. Also recovered was an empty boot box that contained a tag with Movant's fingerprint on it. Although the boots that belonged to the box were never recovered, the shoe imprints within the bloodstains at the scene matched the tread, size, and brand of such boots.

Wendy Phillips, who was the granddaughter of the victims, had been married to Movant's son, Kevin. She testified that she and Kevin knew the location of the safes in the Phillips' home and that they both were aware that the safes contained money. Wendy also informed investigators that Movant disliked her grandparents because they had paid for her divorce from Kevin.

On October 15, 2001, Movant filed a *pro se* motion for DNA testing, in which he also invoked Rule 91.06 and § 532.070, RSMo 2000. Under the petition for DNA testing, he alleged, in part, that he "was denied access to material 'DNA' and other testable evidence in custody of the State that could have aided in his actual innocence in violation of the 5th and 14th amendments [of the] U.S. Constitution." Under the section of the motion relating to Rule 91.06 and § 532.070, RSMo 2000, Movant asserted claims that he was denied a fair and impartial trial and that he received ineffective assistance of counsel.[3]

On January 25, 2002, pursuant to § 547.035.4, RSMo Supp.2001, the motion court issued an order for the State to show cause why Movant's motion for DNA testing should not be granted. On February 15, 2002, the motion court issued an order that an evidentiary hearing be held on the matter because "[t]here is no finding that show[s] conclusively that the Movant (Defendant) is not entitled to a hearing." The hearing was held on August 2, 2002.

On September 12, 2002, the motion court entered its judgment on Movant's motion

---

**3.** The motion was brought under Rule 29.17 (Post-conviction motion for forensic DNA testing not available at trial), which was vacated before its effective date. Motions for DNA testing are now cognizable under § 547.035 (Post-conviction motion for DNA testing; procedure), RSMo Supp.2001, which is how the motion court addressed Movant's motion. Rule 91.06 and § 532.070, RSMo 2000, outline the circumstances under which a court may issue a writ of habeas corpus without application or petition.

for post-conviction DNA testing. According to the court, evidence existed (and had been secured in relation to the crime) upon which DNA testing could be conducted, which consisted of blood samples seized from the crime scene. The court found that the evidence was available to Movant and his counsel at the time of trial, the evidence was not tested by Movant, the technology for DNA testing was available to Movant at the time of trial, the decision to request or not request DNA testing was a matter of reasonable trial strategy, identity was an issue at trial, and DNA identification of blood other than the victims or Movants would not necessarily have been exculpatory as there may well have been a co-actor with Movant in the commission of the offense. The court concluded that, even though identity was at issue at the trial, if DNA results showed blood at the scene belonging to someone other than the victims or Movant, there was no reasonable probability that such a finding would have prevented his conviction. According to the motion court, Movant failed to prove the allegations in his motion be a preponderance of the evidence. Therefore, the motion court denied Movant's motion for DNA testing.

Section 547.035, RSMo Supp.2001, provides that rules of civil procedure govern these proceedings and the same standards that apply in other post-conviction proceedings apply to this appeal as well. *Snowdell v. State,* 90 S.W.3d 512, 514 (Mo. App.2002). Therefore, in this review of the motion court's denial of Movant's request for post-conviction relief, this Court is limited to a determination of whether the findings of fact and conclusions of law are clearly erroneous. *Rousan v. State,* 48 S.W.3d 576, 581 (Mo.banc 2001). Findings and conclusions are clearly erroneous only if, after a review of the entire record, we are left with the definite and firm impression that a mistake has been made. *State*

*v. Ervin,* 835 S.W.2d 905, 928 (Mo.banc 1992).

Under § 547.035.2, RSMo Supp.2001, a post-conviction motion for DNA testing must allege facts that demonstrate:

(1) There is evidence upon which DNA testing can be conducted; and

(2) The evidence was secured in relation to the crime; and

(3) The evidence was not previously tested by the movant because

   (a) The technology for the testing was not reasonably available to the movant at the time of the trial;

   (b) Neither the movant nor his or her trial counsel was aware of the existence of the evidence at the time of trial; or

   (c) The evidence was otherwise unavailable to both the movant and movant's trial counsel at the time of trial; and

(4) Identity was an issue in the trial; and

(5) A reasonable probability exists that the movant would not have been convicted if exculpatory results had been obtained through the requested DNA testing.

Under § 547.035.7, RSMo Supp.2001, the motion court shall order testing if it finds:

(1) A reasonable probability exists that the movant would not have been convicted if exculpatory results had been obtained through the requested DNA testing; and

(2) That movant is entitled to relief.

At the evidentiary hearing, the testimony of Movant's trial counsel ("Counsel"), given by sworn interrogatory was admitted into evidence. He acknowledged receipt of a list of physical evidence and an 11–page lab report from the Southeast Missouri

Regional Crime Laboratory showing results of various testing conducting on the evidence. Counsel, who was a public defender, also verified that the Missouri State Public Defender System had a procedure in place at the time of trial for retaining defense experts to examine and test evidence, including DNA testing.

In response to a question as to whether he had requested DNA testing of any of the evidence in the case, Counsel stated the following:

> No. Based on my present recollection of the case, I do not recall having any reason to believe that the blood of anyone other than the [victims] would be in the house. The state's theory of the case, as I understood it, did not exclude the presence of more than one person acting in commission of the homicide. Had there been evidence of blood not attributable to the [victims] or [Movant], I would have likely brought that out in evidence, as it is my vague recollection that we did bring out in evidence that there was an unidentified fingerprint at the scene, perhaps at a statue in the home.... Such evidence, however, would not have been necessarily contrary to the state's theory of the case. Also, from a defense standpoint, the situation in this case was different from a case where there is a DNA identification of the accused. Here, there was no blood evidence tying [Movant] to the case. This case is also different from a rape case where semen is collected from the victim in a rape kit and the victim says only one person attacked her. In this case, even assuming a best case scenario result from DNA testing (i.e., not [Movant's], not the [victims']), the value of that in attacking the state's case, while certainly not worthless, would not be conclusive.

Regarding whether Counsel had discussed with [Movant] the possibility of DNA testing by the defense, Counsel gave the following response:

> I do not specifically recall such a conversation regarding DNA. Based on my July 2002 review of the file I did find a letter by Curtis Cox which discussed non-DNA testing or examination of some physical evidence by August Niles, who was an expert in another area. From a review of the file, I know that we discussed the problems with the evidence against him with [Movant]. We discussed ways to attack the evidence with [Movant]. I cannot at this time recall that any of our discussions involved DNA testing.

We disagree with Movant that, since an evidentiary hearing was held, we only look to the requirements stated in § 547.035.7, RSMo Supp.2001, to determine whether the motion court should have ordered DNA testing. Under the plain language of the statute, as stated in § 547.035.6, RSMo Supp.2001, if the motion court determines that a hearing should be held, a movant still has the burden of proving the allegations of the motion, which must be as outlined in § 547.035.2, RSMo Supp.2001, by a preponderance of the evidence. *See Self v. State,* 14 S.W.3d 223, 226 (Mo.App. 2000).

As detailed in *Matney I,* the abundance of circumstantial evidence, Movant's conduct in providing various accounts of his activities on the evening in question, and his unusual conduct of soaking the inside of his pickup with water, were relevant and consistent with findings of guilt. 979 S.W.2d at 231. The evidence was sufficient to have permitted a reasonable factfinder to have found Movant guilty of the crimes beyond a reasonable doubt. *Id.*

We agree with Counsel's assessment that the State's theory and the evidence

before the trial court did not preclude the possibility that someone else other than Movant and the victims were at the scene of the crimes. As there was no blood evidence presented at trial that directly tied Movant to the scene, even if DNA testing had been accomplished and showed blood not attributable to either Movant or the victims, that does not lead to a conclusion that the DNA results would have been exculpatory or that a reasonable probability existed that Movant would not have been convicted.

Given the circumstances of this case, the motions court's findings and conclusions were not clearly erroneous.

The judgment is affirmed.

BARNEY, P.J., and GARRISON, J., concur.