**STATE of Missouri, Plaintiff–Respondent,**

v.

**Randy K. BELCHER, Defendant–Appellant.**

**No. SD 29698.**

Missouri Court of Appeals,
Southern District,
Division One.

May 13, 2010.

Rehearing Denied June 8, 2010.

Application for Transfer Denied
Aug. 31, 2010.

Randy K. Belcher, Bowling Green, MO, acting Pro Se.

Chris Koster, Attorney General, and Jamie Pamela Rasmussen, Assistant Attorney General, Jefferson City, MO, for Respondent.

DON E. BURRELL, Judge.

Randy Belcher ("Movant") was convicted of kidnapping, a violation of section 565.110,[1] first-degree assault, a violation of section 565.050, and armed criminal action, a violation of section 571.015, for events that occurred in 1987. Movant was thereafter sentenced to serve consecutive terms of imprisonment of fifteen, fifteen, and four hundred years, respectively. Movant now appeals the circuit court's denial of his *pro se* motion seeking post-conviction DNA testing pursuant to section 547.035. We affirm the circuit court's ruling.

### Facts

This court affirmed Movant's convictions on direct appeal in *State v. Belcher*, 805 S.W.2d 245 (Mo.App. S.D.1991). We draw much of our recitation of the relevant background facts from that opinion. In September of 1987, Movant asked his fourteen-year-old neighbor ("Victim") to come to his house and help him with a plumbing problem. After she entered his home, Movant locked the door and told Victim that he had lied about having a plumbing problem. *Id.* at 247. Movant kept Victim in his house until Movant's father returned. Together, Movant and his father then threatened Victim and took her to a motel room. *Id.* Once at the motel, Movant forced Victim to have intercourse and oral sex with him. *Id.* Movant's father also raped Victim twice. *Id.* The next morning, Movant and his father took Victim to a river, pushed her in, sprayed her in the face with something, struck her with a lead pipe, and shot at her. *Id.* at 247–48. Victim was able to swim away from her attackers and made it to a house along the river, where someone helped her and called the police. *Id.*

At Movant's trial, the State adduced evidence from forensic scientist Frank Booth ("Mr. Booth"), a serologist and trace evidence examiner for the Kansas City Police Department. Mr. Booth testified that he

---

1. All references to chapters 565 and 571 are to RSMo 1986. References to section 547.035 are to RSMo, Cum.Supp.2006.

had tested for the State several articles gathered from Victim, the motel room, and Movant. These articles included State's Exhibits 403 and 404: a pillow case and sheet taken from the bed in the motel room. Serological tests on the pillow case and sheet revealed a B antigenic marker, along with a smaller amount of A antigenic material. In Mr. Booth's opinion, there was too little of the A antigenic material as compared to the amount of B antigenic material to indicate an AB blood type. Instead, Mr. Booth concluded that the materials tested contained a mixture of fluids from two different individuals.[2] Mr. Booth's testimony was that the blood-grouping evidence narrowed the pool of possible suspects from the 1,000,000 people then residing in the Kansas City Metropolitan area to a group of 3,000 people in that area, from which Movant could not be excluded.

At his trial, Movant apparently called a Dr. Su to testify on his behalf.[3] Dr. Su reviewed the results of the testing done by Mr. Booth and testified that the analysis of fluid stains on the motel's bed sheets was based only on an "acid phosphatase test," and that she would not base her conclusions merely on that test. Rather, Dr. Su testified that the fluid should have been examined for sperm cells and P–30 protein.

Dr. Su, in reading the State's report, noted it concluded that "[b]ody hairs from item one[–]dash[–]one match the arm and leg hair of [Movant]" but also indicated that "there was body hair that could not be matched to the submitted standard of [Movant]." Dr. Su stated that a match of body hair "is not as significant as if you

have the match or non[–]match of the pubic or head hairs." Dr. Su stated that this is because head hairs and pubic hairs have additional physical characteristics that are easier to compare with known samples. Furthermore, she stated that the eleven hairs collected as a standard from Movant were not enough to comprise a representative sample. As to comparing the specific hairs, Dr. Su stated that she didn't "have actual hair samples or [her] notes to review and to examine so [she] cannot offer [her] opinions."

In 2006, Movant filed his motion for post-conviction DNA testing with the circuit court. When the circuit court did not rule on his motion, Movant filed a motion for judgment by default and, subsequently, a petition for writ of mandamus with this court. After this court issued an order for the circuit court to show cause as to why it had not ruled on Movant's motion, the circuit court issued findings of fact and conclusions of law in an order denying Movant relief. The circuit court (hereafter referred to as "the motion court") indicated it had denied Movant's request for post-conviction DNA testing because: 1) the identity of the perpetrator had not been at issue in Movant's trial; 2) there was no reasonable probability that the result of Movant's trial would have been different if the jury had been presented with exculpatory DNA test results; and 3) the evidence was not secured in relation to the crime. Movant now appeals the motion court's denial of his motion seeking post-conviction DNA testing.

## Analysis

Movant's sole point on appeal alleges the motion court erred in denying his motion

2. Movant's blood was type B; Victim's blood was type A.

3. The legal file submitted in support of Movant's appeal contains only excerpts from the trial transcript. Those excerpts are also incomplete and out of chronological/numerical order. As a result, it is difficult to discern who is testifying and on whose behalf.

because it "properly pleaded facts which showed [he] was entitled to relief[.]" Movant alleges his identity was at issue, and "whether [Movant] knew [Victim] is irrelevant and does not disqualify [Movant] from DNA testing, in that [Movant] claimed he did not commit the acts alleged . . . ." Movant further alleges the evidence he seeks to have tested was secured in relation to the crime, and that there is a reasonable probability that he would have been exonerated if that evidence had been tested.

### Standard of Review

"Denial of a post-conviction motion for DNA testing is reviewed to determine whether the motion court's findings of fact and conclusions of law were clearly erroneous." *State v. Ruff*, 256 S.W.3d 55, 56 (Mo. banc 2008). "The motion court's findings and conclusions are clearly erroneous only if, after review of the record, 'the appellate court is left with the definite and firm impression that a mistake has been made.'" *Id.* (quoting *Weeks v. State*, 140 S.W.3d 39, 44 (Mo. banc 2004)). When a motion for DNA testing is overruled without a hearing, we review the lower court's determination for clear error. *Id.* In reviewing the adequacy of Movant's pleading, "the court assumes all allegations are true and liberally grants all reasonable inferences therefrom." *Id.* at 57 (citing *Richardson v. Richardson*, 218 S.W.3d 426, 428 (Mo. banc 2007)).

### Statutory Requirements for Post–Conviction DNA Testing

Section 547.035.1 provides a mechanism for any person "in the custody of the department of corrections claiming that forensic DNA testing will demonstrate the person's innocence of the crime for which the person is in custody" to request such testing.

The motion must allege facts under oath demonstrating that:

(1) there is evidence upon which DNA testing can be conducted; and

(2) The evidence was secured in relation to the crime; and

(3) The evidence was not previously tested by the movant because:

> (a) The technology for the testing was not reasonably available to the movant at the time of the trial;

> . . . .

(4) Identity was an issue in the trial; and

(5) A reasonable probability exists that the movant would not have been convicted if exculpatory results had been obtained through the requested DNA testing.

Section 547.035.2.

"If the court finds that the motion and the files and records of the case conclusively show that the movant is not entitled to relief, a hearing shall not be held." Section 547.035.6. Because all of the elements set forth in the statute are connected by the word "and," a movant must show that all of them have been met in his or her case, and we will affirm the motion court's denial of relief if the record conclusively shows that any one of them cannot be met. In the case at bar, elements 1, 2, and 3 are not at issue—there is evidence upon which DNA testing can be conducted, the State concedes in its brief that the evidence was secured in relation to the crime because it was part of "a continuing criminal enterprise," and the technology required for the testing was not reasonably available to Movant at the time of his trial. We will address the final two elements in order.

### Identity at Issue

Movant argues his identity was at issue because he "claimed he did not commit the acts charged" and "[t]he serological evidence presented by the state failed to conclusively show [Movant] to be a perpetrator of the crimes alleged[.]"

 "[T]he DNA testing statute does not require 'mistaken identity.' The statute requires that 'identity be at issue' in the trial, a broader concept than 'mistaken identity.'" *Ruff,* 256 S.W.3d at 57. "In the context of the statute, 'mistaken identity' occurs when the defendant alleges that the crime in question was committed by another person." *Id.* "The phrase 'identity at issue' encompasses 'mistaken identity,' but it also includes all cases in which the defendant claims that he did not commit the acts alleged—as opposed to cases where the defendant admits his actions but puts forth an affirmative defense." *Id.* (citing *Weeks,* 140 S.W.3d at 47). We agree with Movant that his identity was at issue during the trial [4] because he claimed he did not commit the acts alleged and did not assert an affirmative defense.

### Probability of Acquittal if DNA Evidence is Exculpatory

 Movant also argues that DNA testing would reveal that his father was present with someone other than Movant during the commission of the charged crimes.

The motion court's findings in this regard were:

Movant's only argument on this issue is that DNA would of [sic] showed that someone else committed the rape. Movant implies in his motion that if the DNA were to be tested, it would show his father was the individual who committed the rape of the victim. However, this argument fails to address the crimes which were tried in this case. The crime of rape was not charged in this case.

The motion court concluded that, even if DNA testing revealed that Movant's father had committed the rape, "it would further support and corroborate the testimony of [Victim]" because "she stated that both Movant and his father committed these crimes."

In *State v. Fults,* 98 S.W.3d 877, 879 (Mo.App. E.D.2003), the court held that the appellant "would not be proven innocent as to his convicted crimes" even if any forensic DNA testing of fluids collected from the victim's vagina were negative as to the appellant's DNA. The court's reasoning was that there was no testimony that the appellant had ejaculated in the victim's vagina, but only in her mouth. *Id.* Therefore, there was no reason to expect appellant's DNA to be located in the victim's vagina. *Id.*

Here, if we assume the testing Movant desires would establish that his DNA was

---

4. We are reading the plain language of the statute that states identity must be at issue "in the trial." It is arguable that Movant's identity was no longer at issue once Movant admitted his participation in this crime when he pleaded guilty to an accompanying Livingston County rape charge. During that guilty plea, Movant stated, "I did, in fact, kidnap [Victim] from her home, and my father and I drove her to my house. We did, in fact, pick up some video equipment for the motel room. We did, in fact, rape her and photographed [sic] her. We did put her in a car and take her to the Missouri River, and we did, in fact, push her in the river and left her for—left her there. We did, in fact, leave and went [sic] to Humble, Texas." Perhaps more importantly, the opening sentence of section 547.035 indicates that the purpose of the statute is to provide post-conviction DNA testing to those persons who are actually *innocent* of the crime they were adjudged to have committed. Section 547.035.1 (emphasis added).

not present in the stains on the items taken from the motel room, it would only establish that Movant did not vaginally rape Victim at that location. However, the fact that Movant did not vaginally rape Victim at the motel would not clear him of the crimes with which he was actually charged—kidnapping, assault, and armed criminal action. Similar to *Fults*, this is not the type of case where outdated methods of DNA testing were the only link between the crime and an assailant who was a stranger to the victim. In *Fults*, the defendant was the victim's father. Here, Movant was Victim's next-door neighbor.

While Defendant attempts to distance himself from the crime in his appellate brief by pointing out that there were multiple other suspects, his motion explicitly states that the other suspect was "the biological father of [Movant]"—it points to no one else. As to the crimes with which he was actually charged, exculpatory DNA evidence would not necessarily have resulted in his acquittal—Movant could still have been the second perpetrator, even if his DNA was not on the sheet and pillow case taken from the motel.

In *Matney v. State*, 110 S.W.3d 872 (Mo. App. S.D.2003), the court held that "blood other than the victim's or Movant's would not necessarily have been exculpatory as there may well have been a co-actor with Movant in the commission of the offense." *Id.* at 875. Here, Victim testified that Movant was a co-actor with his father. Moreover, Movant's own expert testified that body hairs from guests could remain in motel sheets, even after those sheets had been washed. Therefore, if the DNA testing Movant seeks had, in fact, revealed that the body hairs found in the sheets belonged to someone other than Movant,

his father, or Victim, that finding would also not be exculpatory because those hairs could have belonged to a prior motel guest.

The volume of other evidence in the case adduced from witnesses who were familiar with Movant, including Victim, overwhelmingly pointed to Movant's guilt.[5] Even if the DNA evidence would positively exclude Movant as a donor, there is no likelihood of a different result. On this record, the motion court did not clearly err in denying Movant's motion for post-conviction DNA testing without a hearing.

The order denying relief is affirmed.

BARNEY, J., and BATES, P.J., Concur.

---

**5.** See *State v. Belcher, supra,* for a more detailed discussion of the evidence proving Movant's guilt. As earlier indicated, Movant also later pleaded guilty to having raped Victim at the motel room. See footnote 4, *supra.*