**Randy BELCHER, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD 73545.**

Missouri Court of Appeals,
Western District.

Feb. 7, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 27, 2012.

Application for Transfer
Denied May 29, 2012.

See also, 805 S.W.2d 245, 317 S.W.3d 101.

Randy K. Belcher, Appellant pro se, Bowling Green, MO, for appellant.

Jamie P. Rasmussen, Jefferson City, MO, for respondent.

Before: VICTOR C. HOWARD, P.J., and ALOK AHUJA and KAREN KING MITCHELL, JJ.

ALOK AHUJA, Judge.

In 1989, Randy Belcher pled guilty in the Circuit Court of Livingston County to forcible rape for events that occurred in 1987. He was sentenced to life imprisonment. Belcher now appeals the circuit court's denial, without an evidentiary hearing, of his *pro se* motion seeking post-conviction DNA testing pursuant to § 547.035.[1] We affirm.

### Factual Background

On September 29, 1987, Belcher lured the victim, the fourteen-year-old female

---

1. Unless otherwise indicated, statutory citations refer to the RSMo 2000, as updated through the 2010 Cumulative Supplement.

neighbor of Belcher's mother, into Belcher's mother's home near Rushville and locked the door. *State v. Belcher*, 805 S.W.2d 245, 246 (Mo.App. S.D.1991). Belcher threatened the victim with a stun gun and warned her not to try to escape. *Id.* at 247. Belcher and his father then transported the victim to a motel room where Belcher forced her to have sex with him. *Id.* Belcher subsequently left the room while his father raped the victim twice. *Id.* The next morning, Belcher and his father forced the victim into the trunk of a car and drove her to the Missouri River. *Id.* The Belchers pushed the victim into the river. *Id.* As she was getting out of the water, Belcher's father struck her with a metal pipe. *Id.* The victim was stunned and floated out into the river. *Id.* Belcher then fired several gunshots at the victim; she swam underwater as far as she could. *Id.* Belcher and his father had turned their backs and were walking towards their car by the time the victim resurfaced. *Id.* at 247–48. The victim swam down the river and obtained help. *Id.* at 248.

The charges against Belcher were ultimately prosecuted in two different counties. After a jury trial in the Circuit Court of Greene County, Belcher was found guilty of kidnapping, assault in the first degree, and armed criminal action. *Id.* at 246. Belcher was sentenced to 15 years for kidnapping, 15 years for first-degree assault, and 400 years for armed criminal action. *Id.* The Southern District affirmed Belcher's Greene County convictions. *Id.* Belcher pled guilty to the forcible rape charge at issue here in Livingston County, following the Greene County conviction.

In 2006, Belcher filed a motion for post-conviction DNA testing in the Greene County Circuit Court. The motion court denied the motion without a hearing. The Southern District affirmed. *State v. Belcher*, 317 S.W.3d 101 (Mo.App. S.D.2010). The Court concluded that, even assuming

that DNA testing of the bed linens from the motel room would exonerate Belcher with respect to the victim's *rape*, "the fact that Movant did not vaginally rape Victim at the motel would not clear him of the crimes with which he was actually charged [*in Greene County* ]—kidnapping, assault, and armed criminal action." *Id.* at 106. With regard to the offenses tried in Greene County, the court noted that "Victim testified that Movant was a co-actor with his father," *id.*, and therefore "exculpatory DNA evidence would not necessarily have resulted in his acquittal [of kidnapping, assault, and armed criminal action]—Movant could still have been the second perpetrator, even if his DNA was not on the sheet and pillow case taken from the motel." *Id.* The Court also noted that the presence of another person's body hairs on the motel room's bedsheets could be attributable to prior motel guests, rather than an alternate perpetrator of the crimes. *Id.*

On May 4, 2006, Belcher also filed a motion for post-conviction DNA testing in the Livingston County Circuit Court, asserting that the results would exonerate him for the rape. The circuit court denied Belcher's motion, and we affirmed. The Missouri Supreme Court granted transfer and reversed, holding that the circuit court erred in denying the motion without issuing findings of fact and conclusions of law. *Belcher v. State*, 299 S.W.3d 294, 295–97 (Mo. banc 2009).

On remand, Belcher filed an amended, verified motion requesting post-conviction DNA testing of the victim's underwear and clothing, and the bed linens and other items recovered from the motel room where the rape occurred. Belcher argued that the results of DNA tests would prove his innocence.

The motion court issued a show-cause order pursuant to § 547.035.4 on April 8, 2010. The State responded to the show-

cause order on May 7, 2010. On May 12, 2010, the motion court adopted verbatim the State's proposed findings of fact and conclusions of law, and denied Belcher's motion, finding that Belcher's identity was not at issue in the Livingston County prosecution, and that he had not shown a reasonable probability of a different outcome if DNA testing were conducted. This appeal follows.

## Standard of Review

■■■ We review a circuit court's rulings on motions for post-conviction DNA testing under the same standards applied in post-conviction proceedings under Supreme Court Rules 24.035 and 29.15. *Weeks v. State,* 140 S.W.3d 39, 44 (Mo. banc 2004). Accordingly,

> Denial of a post-conviction motion for DNA testing is reviewed to determine whether the motion court's findings of fact and conclusions of law were clearly erroneous. The motion court's findings and conclusions are clearly erroneous only if, after review of the record, the appellate court is left with the definite and firm impression that a mistake has been made. Where, as here, the motion is overruled without a hearing, this Court reviews the lower court's determination for clear error.

*State v. Ruff,* 256 S.W.3d 55, 56 (Mo. banc 2008) (citations and internal quotation marks omitted); *see also Belcher,* 317 S.W.3d at 104.

## Analysis

### I.

Belcher's principal claim on appeal is that the circuit court clearly erred in denying his motion for DNA testing because identity was an issue at the time of his underlying conviction, and there was a reasonable probability that DNA testing would have resulted in a different outcome. Even assuming that identity was at issue here, however, Belcher cannot establish a reasonable probability that DNA testing would have altered the outcome of his prosecution.

Section 547.035 provides in relevant part:

1. A person in the custody of the department of corrections claiming that forensic DNA testing will demonstrate the person's innocence of the crime for which the person is in custody may file a post-conviction motion in the sentencing court seeking such testing. The procedure to be followed for such motions is governed by the rules of civil procedure insofar as applicable.

2. The motion must allege facts under oath demonstrating that:

(1) There is evidence upon which DNA testing can be conducted; and

(2) The evidence was secured in relation to the crime; and

(3) The evidence was not previously tested by the movant because:

(a) The technology for the testing was not reasonably available to the movant at the time of the trial;

(b) Neither the movant nor his or her trial counsel was aware of the existence of the evidence at the time of trial; or

(c) The evidence was otherwise unavailable to both the movant and movant's trial counsel at the time of trial; and

(4) Identity was an issue in the trial; and

(5) A reasonable probability exists that the movant would not have been convicted if exculpatory results had been obtained through the requested DNA testing.

. . . .

6. If the court finds that the motion and the files and records of the case conclusively show that the movant is not entitled to relief, a hearing shall not be held. . . . .

7. The court shall order appropriate testing if the court finds:

(1) A reasonable probability exists that the movant would not have been convicted if exculpatory results had been obtained through the requested DNA testing; and

(2) That movant is entitled to relief.

█ Belcher's guilty plea, standing alone, does not foreclose him from seeking post-conviction DNA testing pursuant to § 547.035.[2] The Missouri Supreme Court has expressly held that,

[i]f the facts placed the perpetrator's identity at issue, then the mere existence of the guilty plea does not preclude the movant from seeking relief. The statute's requirements are met if the movant demonstrates that up to the time of the plea—as that is as far in the trial process as the case proceeded—identity was at issue.

*Weeks*, 140 S.W.3d at 47.

Identity is at issue under § 547.035.2(4) in all cases in which a movant denies that he committed the crime charged:

[T]he DNA testing statute does not require "mistaken identity." The statute requires that "identity be at issue" in the trial, a broader concept than "mistaken identity." In the context of the statute, "mistaken identity" occurs when the defendant alleges that the crime in question was committed by another per-

son. The phrase "identity at issue" encompasses "mistaken identity," but it also includes all cases in which the defendant claims that he did not commit the acts alleged—as opposed to cases where the defendant admits his actions but puts forth an affirmative defense. *Ruff*, 256 S.W.3d at 57.

█ Here, prior to entering the guilty plea which formed the basis for his rape conviction, Belcher went to trial in Greene County, contesting whether he had abducted, confined, or assaulted the victim. Belcher presented alibi testimony at that trial, in addition to cross-examining the State's witnesses. In connection with Belcher's earlier motion for post-conviction DNA testing in the Greene County case, the Southern District specifically found that "identity was an issue" in the Greene County prosecution. *Belcher*, 317 S.W.3d at 105 ("We agree with [Belcher] that his identity was at issue during the trial because he claimed he did not commit the acts alleged and did not assert an affirmative defense."). In addition, Belcher initially entered a plea of not guilty to the rape charge filed against him in Livingston County. He only entered a plea of guilty after his conviction in the Greene County case. In these circumstances, we assume for present purposes that "identity was an issue" in Belcher's Livingston County rape prosecution up to the time of his guilty plea, satisfying the requirement of § 547.035.2(4).[3]

---

2. The State does not argue that Belcher's motion failed to satisfy the requirements of §§ 547.035.2(1) through (3).

3. While *Weeks* held that identity may be at issue even where a defendant pleads guilty, the Court's opinion makes clear that in *Weeks*, "[d]uring his plea hearing, [Mr. Weeks] did not personally describe the events that formed the basis of the charges. Rather, the prosecutor recited the conduct in which Mr. Weeks had allegedly engaged and asked whether he was guilty of those acts and he agreed that he

was." 140 S.W.3d at 42–43. Here, by contrast, Belcher testified during his plea hearing that:

I did, in fact, kidnap [the victim] from her home, and in fact, pick up some video equipment for the motel room, we did, in fact, rape her and photographed her. We did put her in a car and take her to the Missouri River, and we did, in fact, push her in the river and left her for—left her there. We did, in fact, leave and went to Humble, Texas.

■ Even *if the perpetrator's identity* was at issue, Belcher's motion must still allege that "[a] reasonable probability exists that [he] would not have been convicted if exculpatory results had been obtained through the requested DNA testing." § 547.035.2(5). In this case, Belcher's motion seeks to establish such a "reasonable probability" in two ways. First, Belcher notes that he presented alibi testimony at the Greene County trial indicating that he "was not even at the location of the crime when the alleged victim purport[ed] that she was kidnapped," and alleges that he had "an unrefuted alibi for the entire time the rape was alleged to have occurred, as well as the other crimes in the continuing acts alleged by the victim." Second, Belcher alleges that the DNA test results would positively identify another suspect, namely his father.

Belcher's claims arise in an unusual context. Belcher has been convicted, in a separate and independent prosecution, of other crimes which were part of the same crime spree as the rape for which he now claims his innocence. Belcher's conviction of those other offenses has been affirmed on appeal, and the Southern District has held that the DNA testing which Belcher seeks would not create a reasonable probability of a different outcome as to those other convictions.

Belcher is collaterally estopped from challenging his guilt for the victim's kidnapping and assault.

As long as a conviction is not set aside by an appeal or a post-conviction procedure, it remains a final judgment, and it stands as presumptive proof to the entire world for all purposes that the person convicted was in fact actually guilty.

We need not decide whether Belcher's personal recitation of the facts establishing his guilt, in his own words, distinguishes this case from *Weeks*.

While the defendant may deny guilt, the denial is entirely without legal import as long as the judgment of conviction stands. The judgment conclusively binds the defendant and precludes his assertion of a collateral claim as to which his actual innocence is an essential element.

*Costa v. Allen*, 323 S.W.3d 383, 385 (Mo. App. W.D.2010).

■ Belcher is bound by his kidnapping and assault convictions; this forecloses his argument that he has an alibi for the entire course of events which included the victim's rape. To the extent Belcher merely points to an alibi for the time of the victim's initial abduction from her home, this would not establish his innocence for the kidnapping and assault charges for which he was convicted in Greene County, much less for the rape at issue here. The Greene County jury was presented with this alibi testimony, and convicted Belcher nonetheless. In his direct appeal of the Greene County convictions, the Southern District held that the trial court had not erred in refusing to instruct the jury on an alibi defense based on this evidence. The Court held that no alibi instruction was required because, despite testimony that Belcher was elsewhere at the time of the victim's initial abduction, he could nevertheless be guilty, even of kidnapping, based on the victim's later movement and confinement. 805 S.W.2d at 250–51. That reasoning applies with even greater force here, where the evidence was that the victim's rape occurred several hours after, and in a different location than, the initial abduction. Belcher's naked assertion that he has an alibi for the kidnapping, and as a result the rape, cannot substantiate his right to DNA testing under § 547.035.[4]

4. Our conclusion that Belcher is collaterally estopped from relying on evidence suggesting his innocence of the entire crime spree is bolstered by the fact that evidence of the rape itself played an important role in the Greene

Belcher's claim that DNA testing would implicate his father in the victim's rape is likewise unavailing. Because the evidence indicates that Belcher's father was also present at the scene of the rape, and in fact himself raped the victim, DNA results implicating Belcher's father would not have aided Belcher's defense. In *Matney v. State,* 110 S.W.3d 872 (Mo.App. S.D. 2003), "the State's theory and the evidence before the trial court did not preclude the possibility that someone else other than Movant and the victims were at the scene of the crimes." *Id.* at 877. For that reason, "even if DNA testing had been accomplished and showed blood not attributable to either Movant or the victims, that does not lead to a conclusion that the DNA results would have been exculpatory or that a reasonable probability existed that Movant would not have been convicted." *Id.*

In this case, the victim testified that Belcher and his father kept her in a motel room overnight, and that they both raped and sodomized her. *Belcher,* 805 S.W.2d at 247. DNA test results implicating Belcher's father would not have eliminated Belcher as a perpetrator, but would have been fully consistent with—if not bolstered—the State's case. As the Southern District observed in rejecting Belcher's earlier DNA motion, he "could still have

been the second perpetrator, even if his DNA was not on the [materials] taken from the motel." *Belcher,* 317 S.W.3d at 106.[5]

The motion court did not clearly err in concluding that Belcher has failed to establish that DNA testing would have created a reasonable probability of a different outcome.

## II.

Belcher also makes two procedural arguments. He first contends that § 547.035 is unconstitutional, because it deprives him of his due process right to reply to the State's response to the motion court's show-cause order. We disagree.

■■ "Pursuant to article V, section 3 of the Missouri Constitution, the Missouri Supreme Court has exclusive jurisdiction in cases involving the validity of a statute." *White v. White,* 293 S.W.3d 1, 24 (Mo.App. W.D.2009) (quoting *Ahern v. P & H, LLC,* 254 S.W.3d 129, 134 (Mo.App. E.D.2008)). "However, a party's mere assertion of unconstitutionality does not deprive this Court of jurisdiction." *Id.* "When a party's claim is not real and substantial, but, instead, merely colorable, our review is proper." *Id.*[6]

County prosecution. On the direct appeal of the Greene County conviction, the Southern District rejected Belcher's argument that evidence of the rape and other crimes should have been excluded. The Court noted that, to establish Belcher's guilt for kidnapping, the State had to establish that Belcher confined the victim "with the purpose of, among other things, inflicting physical injury on or terrorizing the victim"; the Court also noted that "[t]he defendant's gratification of his deviate sexual desire upon the person of the victim bears on and tends to explain his reason for detaining [the victim] in a motel room," and that his commission of the other crimes against her "tends to explain his motive for

firing a pistol at [the victim] as an attempt to intimidate or eliminate [her] as a potential complainant." 805 S.W.2d at 249.

5. We note that, even if Belcher did not *personally* rape the victim, he may well have been criminally responsible for *his father's* rape of her on a theory of accessory liability under § 562.041.1(2), RSMo 1986, based on his role in her abduction, movement, and confinement.

6. We note that Belcher initially appealed to the Missouri Supreme Court. No. SC91018. That Court transferred the appeal here in an order filed on February 9, 2011.

■ Here, Belcher's challenge is not in reality an attack on the constitutionality of § 547.035, but is instead directed at the motion court's failure to give him the opportunity to file a reply to the State's response to the show-cause order. Belcher's Reply Brief itself acknowledges that "the statute is silent and does not expressly prohibit a reply or traverse" to the State's show-cause response. Although Belcher later argues that "this statute is *unconstitutionally silent* regarding the permissible filing of a reply to the response to the show cause order" (emphasis added), we construe his claim as one of trial-court error, rather than a challenge to the constitutionality of the DNA-testing statute itself. We accordingly have jurisdiction to decide it.[7]

■ Belcher has a diminished liberty interest in this post-conviction relief proceeding, because he has already been convicted, and that conviction has been affirmed on appeal. In *District Attorney's Office for the Third Judicial District v. Osborne*, 557 U.S. 52, 129 S.Ct. 2308, 174 L.Ed.2d 38 (2009), the United States Supreme Court made clear that:

> A criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man. At trial, the defendant is presumed innocent and may demand that the government prove its case beyond reasonable doubt. But [o]nce a defendant has been afforded a fair trial and convicted of the offense for which he was charged, the presumption of innocence disappears. Given a valid conviction, the criminal defendant has

been constitutionally deprived of his liberty.

> The State accordingly has more flexibility in deciding what procedures are needed in the context of post-conviction relief. [W]hen a State chooses to offer help to those seeking relief from convictions, due process does not dictat[e] the exact form such assistance must assume. Osborne's right to due process is not parallel to a trial right, but rather must be analyzed in light of the fact that he has already been found guilty at a fair trial, and has only a limited interest in post-conviction relief. [Cases involving a criminal defendant's *pre-conviction* due-process rights provide] the wrong framework.

> Instead, the question is whether consideration of Osborne's claim within the framework of the State's procedures for postconviction relief offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental, or transgresses any recognized principle of fundamental fairness in operation.

*Id.* at 2320 (citations and internal quotation marks omitted).

■ The motion court's denial of Belcher's DNA-testing motion without permitting him to file a reply to the State's show-cause response does not rise to the level of a due-process violation. Cases from other jurisdictions have held in various contexts that the failure to afford a litigant the opportunity to file a reply brief generally does not violate due process protections, where—as here—that litigant has already had the opportunity to present favorable arguments in the litigant's opening pleading, and has the opportunity to file further post-decision pleadings.[8] In addition, Bel-

---

7. Because we construe Belcher's argument as directed to the trial court's action on his § 547.035 motion, rather than as a challenge to the statute itself, we reject the State's argument that Belcher failed to raise his constitutional claim at the earliest opportunity (in his original motion), and that he accordingly waived it. Belcher raised his claim in a mo-

tion seeking leave to file a reply, even before the State filed its response to the show-cause order; he raised the claim again in a timely post-judgment motion.

8. *See, e.g., United States v. Luke–Sanchez*, 327 Fed.Appx. 774, 775, 776 (10th Cir.2009) (re-

cher is free to assert on appeal any arguments he could have presented in a reply brief in the trial court, and has failed to identify any specific fact or argument he was unable to present, due to the procedures the circuit court followed. In sum, nothing in the record indicates that the motion court denied Belcher the opportunity to be heard or present his case to the court, or that its actions violated principles of "fundamental fairness." Denying Belcher the opportunity to file a reply brief did not violate his due-process rights.

### III.

Belcher also argues that the motion court denied him due process of law by adopting verbatim the State's proposed findings of facts and conclusions of law. We disagree.

While "[t]he verbatim adoption of a proposed judgment or order has been routinely criticized by Missouri courts," and may create "a problem with the appearance," "[h]owever objectionable we consider this practice, the verbatim adoption of a party's proposed findings of facts and conclusions of law is not *per se* erroneous," and "does not constitute reversible error in and of itself." *Neal v. Neal*, 281 S.W.3d 330, 337–38 (Mo.App. E.D.2009) (citations and internal quotation marks omitted). Our Su-

preme Court has recognized that adopting one party's proposed findings of fact and conclusions of law "has become a common practice in Missouri courtrooms and raises no constitutional problems so long as the court, after independent reflection, concurs with the contents of the proposed findings and conclusions." *Skillicorn v. State*, 22 S.W.3d 678, 690 (Mo. banc 2000). "Still, to be valid, the proposed findings of fact and conclusions of law must be supported by the evidence." *Id.*

■ Here, Belcher does not point to any of the court's findings which he contends are unsupported, or present any independent evidence that the motion court failed to adequately consider his claims. "In the absence of independent evidence that the court failed to thoughtfully and carefully consider the claims, 'there is no constitutional problem with the court adopting in whole or in part the findings of fact and conclusions of law drafted by one of the parties.'" *State v. Link*, 25 S.W.3d 136, 148 (Mo. banc 2000) (quoting *State v. Ferguson*, 20 S.W.3d 485, 510 (Mo. banc 2000) (in turn quoting *State v. Kenley*, 952 S.W.2d 250, 261 (Mo. banc 1997))). The mere fact that the motion court adopted the State's proposed findings and conclusions cannot establish a due-process violation.

jecting claim that habeas petitioner's due-process rights were violated where he was denied opportunity to file reply brief; "The district court denied habeas relief based on the inadequacy of Mr. Luke–Sanchez's legal assertions. It did not, as Mr. Luke–Sanchez suggests, adopt the government's version of events without affording him the opportunity to rebut them."; also noting that "Mr. Luke–Sanchez has never identified what arguments or assertions he would have included in a reply brief, despite filing seven documents related to the issue in the district court"); *In re Disciplinary Proceeding Against King*, 168

Wash.2d 888, 232 P.3d 1095, 1102 (2010) (attorney's due process rights not violated when he was not allowed to file reply to bar association's answer to attorney's motion to vacate disciplinary authority's decision); *Wills v. Moore*, No. 1:07–CV–038, 2008 WL 2323786, at *11 (S.D.Ohio June 3, 2008) ("The mere failure by the state court to allow Petitioner an opportunity to file a reply brief does not rise to the level of a violation of his federal due process rights," when there was "an opportunity to submit facts and evidentiary documents to demonstrate his entitlement to relief when he filed his petition for post-conviction relief").

## Conclusion

The judgment of the motion court, denying Belcher's motion for post-conviction DNA testing, is affirmed.

All concur.